Blanchard v. Burbank.

HENRIETTA BLANCHARD

v.

AUGUSTUS J. BURBANK ET AL.

1. PLEADING—TRESPASS.—In actions of trespass, matters in discharge or justification must be specially pleaded.

2. INSTRUCTIONS—IMPRISONMENT.—The court is of opinion that even if a proper plea of justification had been filed in this case, it is very doubtful whether the evidence was such as to warrant the court in submitting to the jury any hypothesis of a justification of the alleged trespass under the rule laid down in the instructions as to imprisonment of the insane.

3. INSTRUCTION—DEFENDANTS IN TRESPASS.—An instruction, " If any of the defendants are not guilty at all, or if any of them, though guilty, were acting separately and for themselves alone, without any concert with the others and without carrying out a common purpose, they ought to be ac-

Blanchard v. Burbank.

quitted, and those only found guilty who were acting jointly." *Held* erroneous. While a trespass may be joint, it is also in contemplation of law several, and a particular defendant may be convicted as well when shown to have acted alone as when shown to have acted in concert with others.

5. DAMAGES.—If the evidence shows a violation of the plaintiff's rights, the law implies actual damages sufficient to sustain the action, and sufficient, also, to warrant the imposition of vindictive damages if it is further shown that such violation of her rights was willful, wanton or malicious. As the instructions submitted.made it necessary for plaintiff to prove actual damages to sustain her action, they were erroneous.

5. DEBTS AND ACCOUNTS—TRESPASS.—While mere debts and accounts can not be adjusted or litigated in·an action of trespass, yet a plaintiff may recover in such action for money taken from her when such taking is a part of the trespass sued for.

ERROR to the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed April 28, 1885.

This was an action of trespass, for false imprisonment, brought by Henrietta Blanchard against Augustus J. Burbank, Joshua W. Carr, Anna Ewart and the Washingtonian Home of Chicago. The declaration charges the defendants with assaulting the plaintiff and taking her forcibly and against her will from her residence in the city of Chicago to the Martha Washington Home, an asylum for distracted and inebriate persons, situated at Ravenswood in Cook county, and there detaining and imprisoning her, forcibly and against her will, and without the verdict of any jury or the order of any court, and keeping her there imprisoned for the space of four months, and taking and carrying away $500 of her money and converting the same to their own use.

The defendants pleaded not guilty, and at the trial the jury found defendants Burbank and Carr guilty and assessed the plaintiff's damages against them at $500, and found defendants Anna Ewart and the Washingtonian Home not guilty. Both the plaintiff and defendants Burbank and Carr moved for a new trial, but the court overruled said motions and rendered judgment on the verdict.

The bill of exceptions does not purport to set forth the evidence given at the trial, but recites as follows:

Blanchard v. Burbank.

"That on the trial the plaintiff, to maintain the issues on her part, gave evidence tending to show that she came to Chicago in September, 1882, leased a house, furnished the same, and resided therein until December 28, 1882; that defendants Burbank and Carr were house renting agents, and as such, leased said house to the plaintiff; that on or shortly before December 28, 1882, plaintiff was ill and at times delirious; that defendants Burbank and Carr were at plaintiff's house December 28, 1882, and Burbank then said to plaintiff that he had a friend in the country near Chicago, who would take the plaintiff into her house for a short time and kindly treat and care for her, and advised the plaintiff to go to such place, and plaintiff, relying upon said statements, consented to do so; that said Washingtonian Home of Chicago at that time had and possessed certain buildings and premises near Ravenswood, two miles north of Chicago, known as the Martha Washington Home, in which inebriated and opium-eating women were kept and cared for; that between June 1, 1882, and January, 1883, forty-four women were received as patients into said Home, three of whom were received from the Bridewell or House of Correction of the city of Chicago, seven from the Rehobeth Mission, connected with the Chicago Police Court, ten from justices' courts of Cook county, and twenty-four by regular admission, without the order of any court, and that the plaintiff had no knowledge of the existence of any such institution until she was received therein; that from December 28, 1882, to March, 1883, defendant Anna Ewart, was the matron of said Martha Washington Home.

"That on the afternoon of December 28, 1882, defendants Carr and Burbank again came to plaintiff's residence, and plaintiff, believing that she was to be taken to the private residence of the friend of Mr. Burbank, in the country, began to make preparations to go, but before such preparations were completed she became unconscious, and while so unconscious, and without her consent, was placed in a carriage by said Carr and taken to and placed in said Martha Washington Home, on the evening of December 28, 1882, while still unconscious and without her consent; that she was received into

said Home by said Anna Ewart; that said Carr then said to said Anna Ewart that plaintiff was insane; that she was not taken before any court, and no order of any court was made for her commitment to said Martha Washington Home, and that she was kept and confined in said Martha Washington Home against her consent and will, from December 28, 1882, to February 22, 1883; that she daily complained to said matron, Anna Ewart, of her confinement, and at times was violent by reason thereof.

"That one evening, about February 10, 1883, said Anna Ewart went into the room where plaintiff was, and ordered plaintiff to take off and give her the dress plaintiff had on, which plaintiff refused to do; that said Anna Ewart, then being the matron and in charge of said Home, called a man servant of said Home and ordered him to take the plaintiff to the 'padded room;' that said servant then forcibly threw the plaintiff down, then picked her up in his arms and forcibly and against her will carried her into a vacant room known as a 'padded room,' and locked her therein alone; that said room was padded about the wall; that iron grates or netting were placed and fastened across the doors and windows; that said room was very dark, the only light in the same being the light from the hall through the iron grating; that plaintiff resisted to the utmost, the efforts of said man to place her in said room; that she was kept in said room forcibly and against her will nearly all night; that immediately after the arrival of the plaintiff at said Home her trunk was unpacked by order of said Anna Ewart; that her hat, muff and cloak were taken from her room to the room of said Anna Ewart, and placed in a closet and locked therein, and the key taken and carried by said matron, and said cloak, hat and muff were kept locked up by said Anna Ewart during all the time plaintiff was in said Home; that the plaintiff had upon her, when she was taken into said Home, $800 in currency; that a few days afterward all of said money was taken from her person by order of said Anna Ewart; that said Anna Ewart afterward claimed that the amount of money which plaintiff had on her person was $326 only, and not $800, and that the plaintiff was repaid the sum of $326 by said Anna, and no more.

"That the defendants, to maintain the issues on their part, gave evidence tending to show that the plaintiff had for a long time prior to December 28, 1882, been in the habit of taking chloral, and was then under its influence, ill, nervous, unfit to do business or properly care for herself, and without friends or relatives in Chicago; that at the request of plaintiff, defendant Burbank attempted to secure for her admission into St. Luke's Hospital; that being refused, he called on Dr. Emma Gaston, the then physician of said Martha Washington Home, who visited the plaintiff and advised her to go to said Home as the best place to secure proper care and treatment; that plaintiff consented to go there; that an order for her admission was written by Dr. Gaston, and that no one said anything to the plaintiff about going or being taken to a friend of his in the country; that all the money plaintiff had when taken into the Home was $326, and that such money was safely kept, and, less the amount paid for plaintiff's board, was repaid to her by the Washingtonian Home soon after she left said Home.

"That the night plaintiff was placed in a padded room, she refused to go to bed at the hour for retiring under the rules of the Home; that the matron requested and insisted that she should undress and go to bed; that the plaintiff refused, became violent, screamed, threatened to kill herself, and finally said matron did order her taken to the padded room; that the man who took her to said room, put his arms around her and carried her to said room carefully, using no violence and no more force than was necessary to carry her there; that she was kept in said room only three or four hours; that plaintiff was kindly and properly treated in said Home, and gained in health while there; that she had free access with the other inmates to all parts of the house; that she could at any time during the day have gone outside by unlocking the front or hall door, the key to which was kept in the lock."

Both the plaintiff and defendants Burbank and Carr have assigned errors and ask for a reversal of the judgment.

Mr. Frank Baker and Mr. James G. Miller, for plaintiff in error; as to damages, cited Drohn v. Brewer, 77 Ill. 280;

McNav v. Stratton, 9 Bradwell, 216; Sedgwick on Measure of Damages, 6th Ed. 35; Jasper v. Purnell, 67 Ill. 358; Johnson v. Camp, 51 Ill. 219; 2 Addison on Torts, Banks' Ed. 699; Alcorn v. Mitchell, 63 Ill. 553.

Messrs. BANGS & KIRKLAND and Mr. JAMES FRAKE, for defendants in error.

BAILEY, J. As the bill of exceptions does not purport to contain all the evidence given at the trial, it will be presumed that sufficient evidence was heard to sustain the verdict. The principal burden of the argument presented by the counsel for defendants Burbank and Carr is, to show that, as to their clients, the verdict is contrary to the evidence; but as the conclusive presumption of the law is against them on this proposition, it is unnecessary for us to consider the arguments by which they seek to support it.

They also urge that certain of the instructions given, as they claim, at the instance of their co-defendants, were erroneous and prejudicial to them, and that the judgment should be reversed for that reason. Some seventeen instructions were given for the defendants, and it is now insisted that the first eight were given at the instance of defendants Anna Ewart and the Washingtonian Home, and the residue only, at the instance of said Burbank and Carr. The record, however, fails to show that such was the fact. The recitals in the bill of exceptions are to the effect that the entire seventeen instructions were given on behalf of " the defendants," and there is no evidence that any requests for instructions were made on the part of the defense in which defendants Burbank and Carr did not join. But, however this may be, the record shows no exception on their part to either of the instructions of which they now complain, or to any other instruction given on the part of the defense. It thus appears that they are now in no position to complain of either of the instructions criticized by their counsel. The errors assigned by defendants Burbank and Carr must therefore be overruled.

The plaintiff, however, preserved exceptions to each of the

instructions given for the defendants, and the record is open to an inquiry at her instance, as to their correctness. The first instruction is as follows:

" The jury are instructed that any person may lawfully restrain a delirious or insane person, provided such restraint is necessary to keep such insane or delirious person from injuring him or herself or others, and provided such restraint is continued only until a reasonable time and opportunity has happened within which an application may be made to the proper court to determine under the law as to the sanity of such insane or delirious person, and provided that such restraint is made in good faith."

This instruction, though abstract in form, attempts to lay down the law applicable to a justification of the alleged trespass. It tells the jury that under certain circumstances, the trespass and imprisonment would be lawful. As no justification was pleaded, the only plea being not guilty, the defendants could not justify the trespass. The rule is well settled that in actions of trespass, matters in discharge or justification, must be specially pleaded. Hahn v. Ritter, 12 Ill. 80; Olsen v. Upsahl, 69 Id. 273. The rule is laid down by Mr. Chitty, as follows: "The plea of not guilty is proper in trespass to persons, if the defendant committed no assault, battery or imprisonment; but in trespass to persons, *son assault demesne*, moderate correction of a servant, etc., *molliter manus imposuit* to preserve the peace, or a justification in the defense of the possession of real or personal property, or by authority of law, without process, or as a private individual; or under civil process, either mesne or final, of superior, inferior or foreign courts, must always have been pleaded specially." 1 Chitty's Plead. 535. As the defendants were in no position to justify the trespass, an instruction as to the law governing the subject of justification could only mislead the jury. It is probable that under such an instruction they would be inclined to give the same effect to the evidence as though a proper plea of justification had been pleaded.

But even if a proper plea had been filed, we think it very doubtful whether the evidence was such as to warrant the

court in submitting to the jury any hypothesis of a justification under the rule laid down in the instruction. The evidence tended to show that the plaintiff was restrained of her liberty from December 28, 1882, to February 22, 1883, a period of fifty-seven days. The statute provides that, for the purpose of inquiring as to the insanity of persons alleged to be insane or distracted, the county court shall be considered as always open. With a tribunal at hand and always open to make inquisition as to the insanity of persons alleged to be insane, we can scarcely conceive of circumstances which would justify a person in holding another confined as an insane person fifty-seven days, without taking any measures to have the question of his insanity subjected to judicial investigation. Mere good faith will not justify such an invasion of personal liberty.

The defendants' fourth instruction was as follows:

" If any of the defendants are not guilty at all, or if any of them, though guilty, were acting separately and for themselves alone, without any concert with the others, and without carrying out a common purpose, they ought to be acquitted, and those only found guilty who were acting jointly."

For some reason this instruction was repeated in the same identical language, and appears again as the eleventh instruction. It is true that in an action of trespass where there are several defendants, in order to convict all, a trespass must be proved of which all are guilty. If part are shown to have committed one trespass and the residue another, all can not be convicted, and unless the plaintiff elects as to the particular trespass for which he will ask the verdict of the jury, it will be the duty of the jury to make the election, and find their verdict against those guilty of the trespass which they elect to punish, and to acquit the others. In the exercise of this discretion, the court has no right to control them. If two defendants are shown to be jointly guilty of one trespass, and one defendant is shown to be alone guilty of another distinct trespass, we can not see why, if both are equally within the purview of the declaration, the jury may not as properly

convict the one and acquit the two, as to convict the two and acquit the one. While a trespass may be joint, it is also in contemplation of law several, and a particular defendant may be convicted as well when shown to have acted alone as when shown to have acted in concert with others.

The instruction, however, requires the jury to find no defendant guilty who is not shown to have committed a trespass jointly with some other defendant. If no such joint action had been shown, then, under the instruction, the jury would have been compelled to acquit all the defendants, however guilty one or more of them may have been individually. It being shown that Burbank and Carr acted jointly in conveying the plaintiff to the Martha Washington Home, the jury were limited to that particular trespass, however aggravated they may have believed the subsequent torts committed by one or both of the other defendants may have been.

The thirteenth and fourteenth instructions were as follows:

13. "Vindictive damages, or smart money, as it is sometimes called, can not lawfully be awarded by the jury in this case, unless the jury shall first have found, from the evidence, that plaintiff has sustained actual damage, nor unless the jury shall, from the evidence, find that the alleged trespasses, or some of them, were willful, wanton and malicious.

14. "The jury should not guess at, or merely presume or infer, the existence of any actual damages in this case, but they must find from the evidence that such actual damages have been duly shown and proved."

In Webb v. The Portland Manufacturing Co., 3 Story, 189, Mr. Justice Story says: "Actual, perceptible damage is not indispensable as the foundation of an action. The law tolerates no further inquiry than whether there has been the violation of a right." And in the same case the learned justice cites from the opinion of Lord Holt, in Ashby v. White, the following language: "It is impossible to imagine any such thing as *injuria sine damno*. Every injury imports damage in the nature of it."

Mr. Justice Cooley, in his treatise on the Law of Torts, says: "Although damage is a necessary element in an action-

able wrong, it is sometimes damage implied or presumed, not damage shown. There are many cases in which, in point of fact, a showing of pecuniary damages is impossible, and some where it would be easy to show that none had been sustained, in which, nevertheless, the law adjudges that a tort has been committed." After other illustrations of the doctrine, the learned author proceeds: " A more simple case may be that of a man who has entered the field of another for the purpose of plunder, but has been frightened away before the mischief was accomplished. Assuming in such case the impossibility of showing the slightest actual injury, the trespasser is nevertheless held liable to pay damages. The ground of liability is, that from every distinct invasion of right some damage is presumed, and the law therefore makes some award, though no damages are proven, and none are susceptible of proof. If the reason for this is sought for, we are not left in perplexity or doubt. The method chosen for the protection of rights, being an action for the recovery of damages for their invasion, it is manifest that when a party is convicted of the invasion, the conviction must be followed by some consequences disagreeable to himself, or it could not possibly operate as a restraint." Cooley on Torts, 62.

The fourteenth instruction is erroneous in holding that in this case actual damages must be proved, and can not be inferred or presumed, and the thirteenth instruction is also erroneous in holding that, in the absence of such proof of actual damages, vindictive damages can not be given. If the evidence shows a violation of the plaintiff's rights, the law implies actual damages sufficient to sustain the action, and sufficient also to warrant the imposition of vindictive damages if it is further shown that such violation of her rights was willful, wanton or malicious.

The fourteenth instruction is also inaccurate in holding that in order to justify the assessment of vindictive damages, it must appear that the trespass was willful, wanton *and* malicious. Proof that it was either is sufficient.

Upon the principles above laid down, it must be held that the defendant's seventh instruction is also erroneous. That instruction was as follows:

Blanchard v. Burbank.

" The jury are instructed that this is an action brought to recover damages for an injury said to have been done by the wrongful act of the defendants toward the plaintiff; and although the jury may find that the plaintiff was improperly restrained of her liberty by the Washingtonian Home or Mrs. Ewart, yet she can not recover in this action only such damages as she shall have shown, by the evidence in this case, she actually suffered as the result of such wrongful and tortious act on the part of the defendants or the Washingtonian Home or Mrs. Ewart, if any such there was."

The phraseology of this instruction is somewhat obscured by the use of the words "can not" for "can," but the error, we think, is so obvious that any ordinary reader would readily make the correction. But the instruction, by confining the plaintiff's recovery to such actual damages as she had been able to establish by affirmative proof, excluded by its very terms any recovery of exemplary damages. That there was evidence which in the opinion of the court might justify the assessment of exemplary damages is manifest from the fact that the question of such damages was submitted to the jury in several other of the instructions. Such being the case, it was error in this instruction to confine the plaintiff's recovery to actual damages.

But this instruction, like the thirteenth and fourteenth, excluded also all damages which the law implies from the wrongful act itself, and required the plaintiff to establish her damages by evidence beyond and independent of her proof of the wrongful act. Under this rule, however gross or aggravated the wrong inflicted upon her might be, unless she could prove actual damages to herself resulting from it, her action would necessarily fail, as there would be nothing for her to recover.

We think the fifth and sixth instructions, in view of the facts appearing in evidence, were likely to mislead the jury, and should not have been given without further qualification. Those instructions were as follows:

5.  " The jury are instructed that it is immaterial, and they are not to take into consideration whether the plaintiff is indebted to any of the defendants, or the defendants all together,

Blanchard v. Burbank.

or any of them, are indebted to the plaintiff; the verdict and judgment in this action will not determine the rights of any of the parties to this suit as to such indebtedness, if any such there be; that notwithstanding any verdict or judgment that may be rendered in this case, another action may be maintained for such indebtedness if any there be.

6. "The jury are instructed that there can be in this case no adjustment of accounts between the parties to this suit, or any of them."

As the record fails to bring up all the evidence, we can not say what proof there may have been of indebtedness or mutual accounts between the parties. The declaration, however, alleges, as a part of the trespass for which the suit was brought, that the defendants took and carried away $800 of the money of the plaintiff, of which only a part was returned to her, and the evidence tended to prove that averment. So far as the record shows, there was no evidence tending to show any other indebtedness from the defendants, or any of them, to the plaintiff. It is undoubtedly true that mere debts and accounts can not be adjusted or litigated in an action of trespass, but a plaintiff may recover in such action for money taken from her where such taking is a part of the trespass sued for.

The jury in this case may well have supposed that the money taken from the plaintiff and not returned to her, constituted a mere debt from the defendants to her, and they may therefore have understood the instructions as holding that no recovery could be had in respect to the money thus wrongfully taken from the plaintiff. The instructions should have been so modified as to guard against any misapprehension of this character.

For the errors in the instructions above pointed out, the judgment will be reversed and the cause remanded.

Judgment reversed.