## Chicago Title and Trust Company v. John M. Core.

### Gen. No. 4,595.

1. TRESPASS—*defense of license must be specially pleaded.* The defense that the act charged as a trespass was committed by the leave and license of the plaintiff must be specially pleaded.

2. TRESPASS—*when lies.* Trespass lies for the unlawful taking of property pursuant to a rule entered upon a party to show cause why he should not surrender the same, if after such taking such rule is dismissed and no subsequent action taken to adjudicate the question of title and right of possession.

3. RULE OF COURT—*precluding amendment after case set for trial, reasonable.* A rule of court which provides that no change in the pleadings shall be made after the case has been set for trial, without good cause shown, is reasonable, and its enforcement is not an abuse of discretion.

Action of trespass on the case. Appeal from the Circuit Court of LaSalle County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed April 20, 1906.

FELSENTHAL & FOREMAN and WALTER REEVES, for appellant.

HUTTMANN, BUTTERS & CARR, for appellee; EDGAR ELDREDGE, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

On and prior to March 29, 1901, John M. Core owned and operated a meat market in the village of Grand Ridge, LaSalle county. Next door east of him was a hardware store owned and conducted by Reuben Eckert. Eckert also occupied a room owned by Core at the rear of the meat market. Eckert also owned a frame building on the south side of the railroad and on railroad ground, where he stored agricultural implements which he kept for sale. On March 29, 1901, Eckert sold to Core his hardware stock and business, including the building on the right of way, and his outstanding accounts, for the sum of $2,500 and gave Core a bill of sale, which was placed on record that day. Core

paid a small note outstanding on which he was security for Eckert, and paid the balance of the $2,500 in a check on the local bank. On the same day Core took a lease from Eckert for the store building for a term of three years, at an annual rental of $200, the rental for the first six months being treated as paid in the transaction. Core then took possession and conducted a hardware store thereafter. He employed the same clerk Eckert had previously had in the business, and also Eckert's son Clyde. The only sign indicative of ownership was the name of Eckert on the building, and Core did not remove that name, as indeed he had no right to do, for Eckert retained the ownership of the building. Thereafter Eckert had no connection with the business. Core bought in some new goods and stocked up. On the evening of June 1, 1901, Edward St. Clair, a deputy United States marshal, W. E. Wilson, an attorney and agent of the Chicago Title and Trust Company, and W. M. Henderson came into the store. The deputy marshal read to Core an order entered that day in the District Court of the United States for the Northern District of Illinois, in the matter of Reuben Eckert, bankrupt, restraining Core from disposing of the stock of hardware and merchandise transferred by Eckert to him, and that he should show cause on the succeeding Wednesday why he should not turn over the possession of said stock of hardware and machinery to the receiver of said bankrupt. Wilson then read to Core a certified copy of an order made by said District Court of the United States on the preceding 9th day of May, appointing the Chicago Title and Trust Company receiver of the property and estate of Reuben Eckert, bankrupt. Certain things were then said and done in that store between these parties, concerning which there is a sharp conflict in the testimony. The result was that Core delivered up his keys to Wilson as the agent of the Chicago Title and Trust Company, and Wilson took possession of the buildings and of the goods therein connected with the hardware business, took all the money out of the drawer, appointed Henderson custodian, turned the keys over to him, and all but

Henderson left the building. On the following Wednesday Core appeared before the United States District Court, but nothing was done except to dismiss the rule entered upon him to show cause. He demanded his goods from the United States marshal, from the Title and Trust Company and from the custodian, but without avail. The latter part of that month of June the Title and Trust Company as receiver sold the entire property at public auction, Core being present and protesting that it was his property. Core was never restored to the possession of the personal property he had so purchased nor of the building he had rented from Eckert.

On June 27, 1901, which was near the date of the sale, Core brought this suit against the Title and Trust Company, John C. Ames, United States Marshal, St. Clair, his deputy, Hibbard, Spencer, Bartlett & Co., the creditors upon whose petition said rule to show cause had been entered, Wilson, the attorney and agent of the Title and Trust Company, and David Jetzinger, another attorney of the Title and Trust Company, who had participated in the proceedings in the federal court. The declaration consisted of three counts in case and three counts in trespass. At the commencement of the trial plaintiff's attorney stated in open court that plaintiff would offer no proof under the first three counts of the declaration. Defendant claims here, and properly, that the counts in case were thereby abandoned. The first count in trespass was *quare clausum fregit*; the second and third were *de bonis asportatis*. The defendants upon whom service was had pleaded not guilty. The suit was afterwards dismissed as to all the defendants except the Title and Trust Company and Wilson, and, in instructing the jury at the close of the trial, the court directed the jury to find Wilson not guilty, and such a verdict was rendered. The Title and Trust Company was found guilty and plaintiff's damages assessed at $4,000. A motion for a new trial was denied, and judgment upon the verdict was entered, and the Title and Trust Company appeals. Plaintiff assigns cross-errors upon the action of the court in instructing the jury to find Wilson not guilty.

Appellant introduced evidence tending to show that appellee voluntarily turned over the keys and possession, and that it did the acts complained of by leave and license of appellee. It asked various instructions to the effect that if those acts were performed under the leave and license of appellee, the jury should find appellant not guilty. It is urged the court erred in refusing these instructions. There was no plea of justification of any kind. It is laid down as the established rule at common law in 1 Chitty's Pl. 502, 505, that in trespass a license from the plaintiff to do the act complained of must be pleaded specially. It was said in Harris v. Miner, 28 Ill. 135, that in trespass *de bonis asportatis* the plea of not guilty operates only as a denial of the taking. It has been said by our courts in many cases that all matters of leave, license or other justification of an alleged trespass must be specially pleaded. Cook v. Miller, 11 Ill. 610; Hahn v. Ritter, 12 Ill. 80; Sherman v. Colon, 48 Ill. 463; Olson v. Upsahl, 69 Ill. 273; Illinois Steel Co. v. Novak, 184 Ill. 501; Blanchard v. Burbank, 16 Ill. App. 375; Comstock v. Oderman, 18 Ill. App. 326; Ilg v. Burbank, 59 Ill. App. 291; C. & E. I. R. R. Co. v. Casazza, 83 Ill. App. 421; Grabill v. Ren, 110 Ill. App. 587. But appellant insists that no special pleas are required to enable a defendant in an action of trespass to avail of the defense of leave or license or other justification, since the adoption in 1872 of the statute abolishing the distinction between actions of case and actions of trespass; and it relies upon a single sentence in Kapischki v. Koch, 180 Ill. 44. It however appears from the statement of the case there that, although it was said that the action was trespass, yet at least one count was in case, under which the testimony there referred to was admissible by the well-established rules governing pleadings in actions on the case. That case is cited in Papke v. Hammond Co., 192 Ill. 631, on page 643, as authority for the proposition that in an action on the case under the general issue defendant may give in evidence anything which shows that in equity and good conscience the plaintiff ought not to recover. But that the court in

Kapischki v. Koch, *supra*, did not intend to overturn the long-established rule that in an action of trespass a justification must be specially pleaded, is obvious from the later opinion of the same court in Illinois Steel Co. v. Novak, *supra*, where it was held that such defenses are not available under a plea of not guilty in an action of trespass. We are, therefore, of opinion that the court did not err in refusing the instructions in question.

The trial court refused leave to defendants to file special pleas on the eve of the trial. Assignments of error are based on this refusal. These assignments are not argued in appellant's brief, and they are therefore waived. Moreover the record shows that this refusal was in the enforcement of a reasonable rule of court there existing that after a cause is set for trial, no change in pleadings will be allowed without good cause shown. The suit was begun June 27, 1901. The Title and Trust Company filed a demurrer on January 22, 1902, and a plea on October 15, 1903. The case was set for April 3, 1905, and on the latter date the application was made to file special pleas. No good reason was shown and leave was properly denied.

Appellee testified that when the gentlemen above named came into his store on the evening of June 1, 1901, they were all strangers to him; that St. Clair told him he had a paper or writ to serve upon him, and asked him to step back towards the rear of the store, and the four men went back, and St. Clair then read a paper to him, the purport of which he seems not to have fully understood; that Wilson then read another paper to him; that one or the other of these gentlemen then demanded of him possession of the store, and told him that he had better let them have it peaceably, and that if not, they should take it anyway and would also take him in charge; that he asked some questions as to who would be responsible for the seizure of his property and they gave him the names of Hibbard, Spencer, Bartlett & Co. and other prominent hardware firms, and told him they were on the bond, and also that the Title and Trust Company would be responsible; that he told them that this

Chicago Title & Trust Co. v. Core.

looked like a holdup, but he supposed he would have to obey; that he was frightened by the fact that one of the gentlemen was introduced to him as a United States marshal; that he accordingly turned over the keys; that he then went to the drawer to get the cash therein, and that Wilson forbade him to take it, and told him if he had a hat and coat there he could take them, but that he could take nothing else, and for him to get out. St. Clair, Wilson and Henderson deny the most of appellee's version of this conversation, and their testimony is that after the papers had been read Mr. Wilson asked him for the keys, and he handed them over. Their voices were low and their language not harsh or ungentlemanly, but there are several things indicating that they were there for the purpose of getting possession of the goods if possible, without waiting for a hearing on the following Wednesday on the rule to show cause. Wilson, the agent of the Title and Trust Company, testified that he intended to get the goods if he could. He took Henderson with him from Chicago to act as custodian. He had no occasion for a custodian, unless he obtained possession of the goods. St. Clair admits that at a hearing in bankruptcy growing out of those proceedings he may have testified that on the way from the depot to the store that night Wilson told him to notice and witness that Core would give up the keys voluntarily; and St. Clair testified that something of that kind was said. This indicates that Wilson intended if possible to put Core in the position of giving up the keys voluntarily, and was desirous of having St. Clair notice closely what was done in that respect so as to be a witness thereafter to the voluntary surrender of the keys. There are some other circumstances tending to indicate that the men there present from Chicago designed to obtain possession by a species of compulsion which should be so gentle that appellee would yield to it without realizing the effect. There is nothing to indicate that appellee did not buy this property in good faith. He paid a price for it which appellant now contends was more than it was worth; he had been openly running

the business for more than two months and had added new stock; and it has never been established in the bankruptcy court or elsewhere, so far as appears, that he was anything other than the honest owner of that property. There was no reason why he should be willing to surrender it to the officers of the law and take his chances of afterwards recovering its value in a lawsuit; and all things considered, we are satisfied with the conclusion of the jury upon the facts that he yielded to a species of constraint intentionally exercised on him by the persons then present, and which was sufficient to deprive appellant of any right to claim that it took these goods with the full consent of appellee, and that therefore it is not liable to him for the value of the goods so wrongfully taken from him, if it had interposed pleas setting up such a defense.

Appellant filed an inventory of the goods so taken in the federal court, attaching thereto the valuation it placed upon the property. It is urged the court erred in permitting appellee to introduce in evidence the prices attached to this inventory. Appellant is a corporation and acts only by its agents, and we see no reason why the prices it fixed upon this property in a formal document prepared and filed by it in court are not evidence against it, tending to show the value.

Various complaints are made of other instructions than those already noticed. We do not approve of certain language interpolated into a stock instruction given as number one, but we are of opinion that it was not calculated to harm appellant. As to other instructions of which complaint is made, we find in them no reversible error. No argument has been made in support of the ruling of the court in directing the jury to find Wilson not guilty, and so far as we are able to see the cross-errors upon that subject are well assigned, but appellee does not ask us to reverse on that ground, unless we also reverse for errors assigned by appellant.

The proof introduced by appellee tended to show that the property so wrongfully taken was worth $3,500. Ap-

pellant introduced proof tending to show that it was worth about $2,000. We are satisfied that the preponderance of the evidence is that the property was worth about $3,500. The court did not err in giving an instruction on the subject of punitive damages, for there was proof which would justify the imposition of such damages. Whether punitive damages should be awarded was a question of fact for the jury, and we do not feel warranted in disturbing their conclusion on that subject, after it has received the approval of the trial judge.

The judgment is affirmed.