## Matt W. Pinkerton v. Walter Martin.

1. ARREST—*Liability of Employer for the Acts of Employes.*—A proprietor of a detective agency ordering an illegal arrest, and confinement in his own office, by his own employes, ought not to be permitted to escape responsibility if outrage is committed, on the ground that he did not specifically order it.

2. SAME—*Where the Law Implies Malice, Probable Cause no Justification.*—Where a person was decoyed into Chicago upon false pretenses, illegally arrested and unlawfully confined for two weeks, being denied all communication with his friends or the outside world, and with no attempt whatever to have a legal investigation as to his guilt of any crime, the law will imply malice, and probable cause furnishes no justification.

Trespass, for an alleged malicious arrest and false imprisonment. Trial in the Circuit Court of Kane County; the Hon. CHARLES A. BISHOP, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899. Rehearing denied May 18, 1899.

CHARLES WHEATON, attorney for appellant.

CHESTER M. DAWES and HOPKINS, THATCHER & DOLPH, attorneys for appellee.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was an action of trespass for an alleged malicious arrest and false imprisonment of appellee by appellant. The suit was originally brought against appellant, together with H. O. Devereaux and Charles Mitchell, of Chicago, also A. F. Beverly and Ole Oleson, of Kane county.

The amended declaration avers that the defendants on the 23d day of October, 1893, with force and arms, maliciously made an assault upon the plaintiff, and maliciously seized and laid hold of him, and maliciously imprisoned the plaintiff in the detective office of Matt W. Pinkerton, at Chicago, and maliciously ill treated him, etc. The defenses interposed were the general issue, release and a plea of justification under a warrant issued by a justice of the peace upon the complaint of Ole Oleson in writing, charging the plaintiff with having committed the crime of arson. Replications were filed setting up the alleged illegality of the arrest and detention of the plaintiff; rejoinders were interposed upon which issues were formed as to the legality of the arrest and detention. Before the trial the suit was dismissed as to Beverly and Oleson, leaving appellant and Devereaux as the only defendants to be proceeded against, Mitchell never having been served with process.

On the first trial the jury disagreed, but on the second trial the jury returned a verdict finding appellant guilty, Devereaux not guilty, and assessing appellee's damages against appellant at $850. A motion for new trial was overruled by the court and judgment entered on the verdict, to reverse which this appeal is prosecuted.

It appears from the evidence that some time in the fall of 1893, a creamery factory at St. Charles operated by Chuning Brothers, was destroyed by fire which was suspected to be the work of an incendiary. That appellant, who was carrying on a detective agency in Chicago, was employed by parties interested in the creamery property to ferret out the suspected crime and arrest the criminals if found. The suspicion of the detectives in the employ of appellant, for some reason, appear to have fallen upon

the Chunings, and appellee being thought to have some connection with them and to know something of the alleged crime, it seems to have been determined to get him into Chicago, have him arrested on a charge of having committed the crime, and then get him into appellant's "sweat box" to extort from him his supposed knowledge of the guilty parties. In pursuance of this scheme, we think the evidence shows appellee was decoyed into Chicago by a ruse, devised by appellant, his superintendent or employes, and there arrested upon a warrant issued by a justice of the peace of Cook county, on complaint charging a crime committed by appellee in Kane county, said Charles Mitchell, an employe of appellant, being specially deputized to make the arrest. Mitchell found appellee at the Chicago Opera House Block, where he had been decoyed on a pretense of meeting a person calling himself Hines, but who was in fact Devereaux, appellant's superintendent, and was there arrested. Instead of taking appellee to the office of the justice, as commanded by the warrant, Mitchell took him to the Pinkerton office, although the route traveled was immediately past the door of the justice's office. Mitchell testified that in taking appellee to the Pinkerton offices and not to the office of the justice, he acted under the orders of his superiors. Appellee testifies that after they got him to the Pinkerton office he was searched, all his papers and every thing he had was taken from him, his private letters read, and he was then put into an inner office. That Devereaux told him he was in great danger of going to State's prison for five years, but that if he would tell all he knew they would send him anywhere he wanted to go, and would pay all his expenses. Appellee demanded his liberty, denying all knowledge of the alleged crime; he wanted to inform his friends of his whereabouts but this was denied him. He had an uncle occupying a responsible position in the city of Chicago, and desired to communicate with him, and let him know where he, appellee, was. Those having the custody of appellee permitted him to write a letter to his uncle, asking the latter to send him a lawyer, but the letter appears never to have been sent or allowed to reach the

uncle; nevertheless, a person appeared who tried to make appellee believe he was a lawyer sent by the uncle in response to the letter, but who did nothing for appellee and only talked with him about the alleged crime. He was evidently acting for appellant and not for appellee.

During the time appellee was being held in custody, appellant visited him personally on several occasions, and by threats and intimidation, tried to induce him to tell all appellant claimed appellee knew about the fire. Appellee further swears that during the two weeks he was kept in custody at the Pinkerton offices, he was in constant confinement. That at night his clothes were all taken from him and locked in a closet and that on four different occasions he was chained and shackled to the bed by the persons having him in charge. This latter complaint is denied by those who had the custody of appellee, but it was for the jury to say whom they believed under all the circumstances. It is perhaps unnecessary to further detail the outrages perpetrated upon appellee and not denied by appellant, but in our opinion they were of such a character as to call for the severest condemnation. For two weeks appellee was kept in close confinement without an opportunity of letting his friends know where he was. Mr. H. D. Wylie, his uncle, became greatly alarmed about appellee, and advertised in the newspapers for him and put the matter into the hands of the police, fearing he had been the victim of some foul play. Finally, learning through the postoffice at St. Charles that appellee's mail had been ordered forwarded to lock box 588, Chicago, Mr. Wylie ascertained that this was appellant's private postoffice box, and then he went to the Pinkerton offices and demanded to see appellee. Devereaux, the superintendent, denied that appellee was there, and said he had gone to Geneva. Subsequently, on the same evening, one of appellant's employes took appellee to Geneva where, for the first time, regular process was issued for his arrest; he was afterward indicted, and after three terms of court had passed at each of which he demanded a trial the indictment against him was *nolle prossed* and no further proceedings were had against him. There is not, in the

whole record, any evidence that appellant or his employes had even a well founded suspicion that appellee had been guilty of any crime. They appear to have thought he knew something against the Chunings, which they desired to have him tell, and for the purpose of extorting some confession from him as to guilty knowledge, they perpetrated upon him one of the greatest outrages which have ever come before the courts of this State in cases of this character. One of the points made for reversal is that the damages are excessive, but we think it idle to argue that a verdict and judgment for $850 are excessive, even upon the facts admitted by appellant, while if the jury believed one-half of the story told by appellee, they would have been warranted in giving very much larger damages. Attempt is made in argument to show that some of the indignities appellee claims were perpetrated on him, were not authorized or ordered by appellant. We are satisfied from the evidence that he is responsible for the conduct of his employes in the treatment of appellee, from the time he was arrested until his final discharge from their custody. One ordering an illegal arrest and confinement in his own office, by his own employes, ought not be permitted to escape responsibility, if outrage is committed, on the ground he did not specifically order it.

It is objected that the court improperly excluded from the jury a certain letter written by appellee to his brother while still in the custody of appellant. The court excluded the jury, and in their absence heard evidence as to the circumstances under which the letter was written, and the reasons given by appellee for writing it. While it would not have been improper to have admitted the letter and let it go to the jury with the appellee's explanations, we do not regard its rejection as so far erroneous that the judgment should be reversed for that reason alone.

The so-called release went to the jury and was no doubt considered by them in connection with all the other evidence in the case and given such weight as they thought it entitled to.

It is argued that there is no proof of express malice or want of probable cause. We think the authorities cited by counsel on this question are not in point and have no bearing when applied to the facts of this case. Here, the arrest and detention were in themselves unlawful. Appellee was decoyed into Chicago upon false pretenses, then illegally arrested and unlawfully confined for two weeks, being denied all communication with his friends or the outside world, and with no attempt whatever to have a legal investigation as to his guilt of any crime. Under these circumstances the law implies malice, and probable cause would furnish no justification. This proposition is elementary, and it is scarcely necessary to cite authorities in its support. Johnson v. Von Kettler, 84 Ill. 315.

We think there is no error in the fifth instruction given on behalf of appellee, and that the evidence was amply sufficient to warrant the court in giving it to the jury. Nor do we find any other error in the instructions.

One of the grounds of the motion for a new trial was the alleged surprise of appellant, at a portion of the testimony of his superintendent, Devereaux, as to appellant's presence in Chicago during the time appellee was confined in his office, and the affidavit of appellant was filed in support of this ground of the motion. We think the affidavit was not sufficient to require the court to give a new trial on the ground of surprise, and otherwise there appears to be no reason for allowing the motion.

As we have already said, considering all the circumstances of indignity appearing in the evidence, the damages were not excessive, and the judgment must be affirmed.