## Matthew W. Pinkerton and Israel W. Bollinger v. William Sydnor.

1.  PRACTICE—*Going to Trial Without Issue Joined.*—Where the parties to a civil suit go to trial without an issue of fact joined, the irregularity is cured by the verdict.

2.  TRIALS—*Unnecessary Comments by the Trial Judge.*—It is a sal-

utary rule that the trial judge should, during a trial, refrain from any unnecessary comments which might tend to a result in this regard prejudicial to any litigant, but when it becomes unavoidable in the procedure of a trial to impose a fine upon any person connected therewith, it can not be held that this should of itself cause a mistrial, merely because the occurrence might have some influence upon the minds of the jury.

3. DAMAGES—*$1,271 Not Excessive.*—Where a person is arrested without legal cause and unlawfully detained in custody for three days and nights in a detective agency, a verdict for $1,271 is not excessive.

**Error** to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed February 5, 1900.

**Statement.**—This suit was brought by defendant in error to recover damages for an alleged unwarranted arrest and false imprisonment of defendant in error by plaintiffs in error and others sued jointly.

The evidence discloses that defendant in error was employed as a night watchman at a warehouse of which plaintiff in error Bollinger was manager. Sums of money had been stolen from the safe of the warehouse. Bollinger employed private detectives to watch the premises in order to discover the thief. Brown and Perry, the two detectives who undertook this work, were hidden in the warehouse on the night of November 24, 1894. Sydnor, the defendant in error, while upon duty as watchman on that night, found the door of the safe unlocked. He examined it, left it unlocked, and went to other parts of the building upon his rounds as watchman. When he returned the two detectives arrested him, put handcuffs upon him and took him to a room in the same building, where he met Bollinger. Bollinger accused him of the thefts. Sydnor denied any guilt. He was then taken handcuffed to the detective office of Matthew W. Pinkerton, one of plaintiffs in error. That night he was chained to a bed. While in the office of Matthew W. Pinkerton, the latter interviewed him and advised him to confess, and suggested that if he would tell about the money that Bollinger would give him back his position. Sydnor protested his innocence. He was detained a prisoner at this office from Tuesday night, when he was

arrested, until Saturday morning, when he was discharged.
During this period he was taken out by a detective to get
his meals. It would seem that after the first night of his
imprisonment he was not chained to his bed.

The suit was discontinued as to certain defendants. The
other defendants demurred to the declaration, which con-
sisted of three counts. This demurrer was sustained as to
the third count only. Defendant Bollinger, plaintiff in error
here, then pleaded the general issue as to the first and sec-
ond counts of the declaration. No plea was ever filed by
Pinkerton, nor was there any rule upon him to plead, nor
was any order of default entered.

The cause was reached for trial and the plaintiff, defend-
ant in error here, appeared. Mr. Brace appeared as counsel
for Bollinger. At the commencement of the trial no one
appeared for Pinkerton. Neither Bollinger nor Pinkerton
were present in person. After a jury had been impaneled
and the defendant in error had been called as a witness and
had testified upon his direct examination, Mr. Beattie, coun-
sel for Pinkerton, came into the court room. Defendant in
error was cross-examined at length by counsel for Bollin-
ger and by counsel for Pinkerton. After the testimony of
defendant in error was given, one witness was examined as
to a question of identity. The counsel for all the parties
made their arguments to the jury. At the close of these
arguments, Bollinger entered the court room. Counsel for
Bollinger requested the court to permit his client to be
examined as a witness in his own behalf. This was denied
by the court. Counsel for Pinkerton objected to the lan-
guage of the court in ruling upon the request, and the court
imposed a fine upon the counsel thus objecting, holding,
evidently, that the language in which the objection was
couched was a contempt of the court. The colloquy between
court and counsel was as follows. Counsel for Bollinger in
urging his request that the latter be permitted to testify,
said among other things:

"We submit it would serve the purposes of justice, al-
though he came into the court room a few minutes late, to
examine him."

Thereupon the court said :

"It is not a few minutes late. The case is all closed. Now, if I open the case again, I have got to open the case, not only to hear this testimony, but testimony on the other side and all the arguments over again. I don't know but what he was right out in the hall there." ·

Thereupon Mr. Brace said:

"We will show by him what caused his delay, and that he got here as soon as he possibly could; as soon as it was physically possible."

Thereupon the court said :

"I never could do business here, and no court could, if parties could go away or stay away whenever the case was called, and then come in after finding out what the testimony was and what the arguments were."

Thereupon Mr. Beattie said :

"I don't think the remarks of your honor are fair, and I desire to except to that remark of your honor in the presence of the jury."

Thereupon the court said :

"Mr. Clerk, fine Mr. Beattie twenty-five dollars for contempt of court, and let him stand committed until the fine is paid. Mr. Bailiff, see that the fine is paid."

Thereupon Mr. Beattie said :

"Please allow an exception to that order to go into the record."

All of which matters, following the arguments of counsel, took place in the presence and hearing of the jury. Thereafter the court gave to the jury the following instruction :

"If the jury find from the evidence that the defendant caused the arrest of the plaintiff as charged in the declaration, then they will find the defendants guilty and assess the plaintiff's damages at such sum as they may find from the evidence he should receive, not to exceed the sum of $5,000."

The jury found the plaintiffs in error guilty and assessed the damages at $1,271.

Upon motion for a new trial an affidavit by plaintiff in error Bollinger was presented, by which it was alleged,

among other things, that the affiant had first learned that the cause was about to be called for trial a few minutes before 10 A. M.; that he proceeded at once to the court room, arrived about 10:45 A. M., and found that the case had been " tried and disposed of," excepting arguments of counsel.   It is also alleged in this affidavit that when affiant Bollinger met the defendant in error in custody of the two private detectives the evening of the arrest, the detectives informed affiant, in presence of defendant in error, that they had seen the latter open the doors of the safe; that he had keys in his hand; that he opened affiant's office desk, but that the detectives were unable to see whether he took anything from safe or desk.   It is also alleged in the affidavit that after his arrest, defendant in error was about to be taken to a police station, when he begged to be taken to the detective agency rather than to the station. That he was then taken to the detective office and allowed to remain there at his own request, and as an alternative to going to a police station.   The affiant alleged also that he talked with plaintiff in error upon the following day, and that he then " expressed himself as having been well treated and being satisfied with his treatment, except that he desired haste to be made in investigating his case."

A motion for a new trial and a motion in arrest of judgment were overruled, and judgment was rendered upon the verdict, from which judgment this appeal is prosecuted.

C. STUART BEATTIE, for plaintiffs in error.

EDWARD H. MORRIS, attorney for defendant in error.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

It is assigned as error that the trial court erred in overruling the motion in arrest of judgment, because it appears from the record that when the cause was put upon trial no pleas had been filed by plaintiff in error Pinkerton, no rule upon him to plead had been entered, and his default had not

been taken.   It was undoubtedly irregular practice to proceed to a trial of an issue of fact when no such issue had been presented by the pleadings, so far as this one plaintiff in error is concerned, but the error can not now be availed of by plaintiff in error.   He had not pleaded, but through his counsel he appeared at the trial and took part therein.   There was no issue of fact as to his case formulated by the pleadings, but by his conduct he treated the cause as presenting the issue upon which the cause was submitted to the jury.   After a trial of the merits, in which he participated, he can not now be heard to complain that there was no issue to be tried.   If the trial had resulted in a verdict of not guilty, the defendant in error, plaintiff below, could not have been heard to object that there was no issue to be tried, after he had participated in the trial of the issue of guilty or not guilty; nor can plaintiff in error, under like circumstances, be heard to make such complaint after a verdict of guilty.   The question was not raised in the court below until after verdict.   The irregularity was cured by verdict.   Brazzle v. Usher, 1 Ill. 35; Ross v. Reddick, 2 Ill. 73; Graham v. Dixon, 4 Ill. 115; Armstrong v. Mack, 17 Ill. 166; Strohm v. Hayes, 70 Ill. 41; Gibbie v. Mooney, 22 Ill. App. 369.

It is assigned as error, and urged here, that the trial court erred in using language in the presence and hearing of the jury which was calculated to prejudice the rights of plaintiffs in error, and that the action of the court in imposing a fine upon one of counsel was also calculated to cause such prejudice.

The propriety of the action of the court in imposing a fine upon counsel is not here involved; the only question here being as to whether the action of the court, in the presence and hearing of the jury, and the language of the court, were so far likely to prejudice the right of plaintiff in error to a fair trial as to be ground of reversal.   We are aware that juries are sensitive bodies, and that slight things are likely to influence them in their disposition toward litigants.   It is, therefore, a salutary rule that the trial judge

should, during the trial, refrain from any unnecessary comments which might tend to a result in this regard prejudicial to any litigant. But when it becomes unavoidable in the procedure of a trial to impose a fine upon any person connected therewith, it can not be held that this should of itself cause a mistrial merely because the occurrence might have some influence upon the minds of the jury. The propriety of the fine itself not being here involved we can not say that the language of the court in making the order was of itself sufficient to constitute reversible error. Nor do we think that the comments of the court, in denying the request to permit Bollinger to testify, were so far prejudicial to plaintiff in error as to warrant a reversal. The probable effect of any such comments must be measured largely by the facts of the case presented. The facts of this case are such that we feel it safe to assume that the result of the trial could have been no different had the language objected to not been used.

It is urged that the instruction given to the jury is erroneous. We are of opinion that this contention can not be maintained. Pinkerton is shown, by the evidence, to have been not only in the position of one who ratified the acts done by the two detectives, Brown and Perry, but, as well, to have been a principal in the causing of the continuance of the unlawful imprisonment from Wednesday until Saturday. He knew that Sydnor was improperly imprisoned within his office on Wednesday, at which time he talked with him and endeavored to get a confession of guilt from him. Upon failure to obtain such confession, Pinkerton permitted the unlawful imprisonment to continue in his premises, and presumably, by his authority, until Saturday morning. The facts here to charge him as a principal are much like the facts disclosed by the decision in Pinkerton v. Martin, 82 Ill. App. 589, wherein the court, speaking through Mr. Justice Crabtree, said:

" We are satisfied, from the evidence, that he is responsible for the conduct of his employes in the treatment of appellee from the time he was arrested until his final discharge from their custody. One ordering an illegal arrest

and confinement in his own office, by his own employes, ought not to be permitted to escape responsibility, if outrage is committed, on the ground that he did not specifically order it."

It is true that in the case here there is no positive evidence that the men, Brown and Perry, who made the arrest, were employes of Pinkerton. But from the facts that defendant in error was taken to the office of Pinkerton and that he was there interviewed by the latter, and that his imprisonment was thereafter continued in the office of Pinkerton, the jury might fairly infer that the treatment of the defendant in error, at least after he was brought to the office, was by authority of Pinkerton. No showing to the contrary was made, either at the trial or upon the motion for a new trial. The instruction, therefore, was not erroneous, as being applicable only to a condition of facts not warranted by the evidence. No other objection to the instruction is argued.

We are of opinion that the evidence is sufficient to support the verdict, both as to liability and as to the amount of damages awarded.

There is no evidence showing a pecuniary loss of the amount awarded; but the case is one which warrants the granting of damages for injury to the defendant in error beyond the mere matter of money loss, and, as well, the inflicting of damages as smart money.

It is conceded that the arrest and the imprisonment which followed were without warrant of law. It is not contended that defendant in error was guilty of the charge which was made against him. In the affidavit of Bollinger it is stated :

"After plaintiff had been in custody for some three days, it was learned that nothing was taken from the safe on the night that said operatives arrested plaintiff, and as it was not possible to identify plaintiff with the previous losses of money from said safe, he was released from custody by the operatives of said detective agency."

In consideration of the gravity of the wrong done to defendant in error, we are of opinion that the verdict was moderate in amount.

The only remaining question is as to whether the court erred in not granting a new trial because of the showing made by the affidavit of Bollinger.

The only attempt to disclose to the court any ground of defense to the action is by this affidavit. Taking all that it contains as true, and assuming that it should be considered, although no motion for a continuance was made upon the ground of Bollinger's absence, yet the contents of the affidavit make no showing which would question the liability of the plaintiffs in error or the right of defendant in error to the recovery. The judgment is affirmed.