## Charles M. Wood, sheriff, etc., v. L. J. Olson.

1. ARREST—*when, illegal.* Where the sheriff has not seen the crime committed for which he makes the arrest, without a warrant, such arrest is illegal if the crime was not actually committed, notwithstanding he may have had reasonable and probable cause for believing it had been committed by the person so arrested.

2. DETENTION—*when, illegal.* Where the sheriff has in his custody citizens who are in the eyes of the law innocent of any crime, it is his duty, without unnecessary and unreasonable delay, to afford to each and all of them an opportunity to be heard or to give bail, even if to do so it becomes necessary for him to procure the aid of additional deputies, and if, in affording such opportunity so to be heard or to give bail, he is guilty of unnecessary or unreasonable delay, an unlawful detention takes place.

3. FALSE IMPRISONMENT—*what not defense to action for.* In an action of trespass for false imprisonment belief in the guilt of the party arrested, no matter how strong or well founded in the mind of the officer or person making the arrest, will not be justification, and it is unimportant, likewise, whether the circumstances would lead a reasonable or prudent person to believe that the accused was actually guilty.

4. INSTRUCTION—*must not single out specific fact.* An instruction which singles out a specific fact and which tells the jury what inferences it should give to such fact, if found in a particular way, invades the province of the jury and is erroneous.

5. INSTRUCTIONS—*must not be contradictory.* Where instructions upon a material issue in a cause are self-contradictory, error is committed.

6. TRESPASS — *when instruction in, is erroneous.* An instruction given in an action of trespass for false imprisonment is erroneous which tells the jury that it was the duty of the defendant to perform certain acts which as an officer of the law he, as a matter of fact, had no right or power to perform.

Action of trespass. Appeal from the Circuit Court of Sangamon County; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the May term, 1904. Reversed and remanded. Opinion filed November 18, 1904.

CONKLING & IRWIN, HAMILTON & CATRON and JOHN C. SNIGG, for appellant.

JAMES E. DOWLING, ROBERT H. PATTON and PATTON & PATTON, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in trespass, by appellee against appellant, who was sheriff of Sangamon county, to recover damages resulting from the alleged wrongful arrest and imprisonment of appellee by appellant. Judgment was rendered in the Circuit Court against appellant for the sum of $750, to reverse which he appeals.

The first count of the declaration charges, in substance, that the defendant seized plaintiff, conveyed him to the county jail and there imprisoned him, without reasonable excuse. The second count charges that the defendant, as sheriff, by his deputies, without any reasonable or probable cause, and without any warrant whatever, arrested plaintiff under the false charge of gaming, incarcerated him in the county jail and neglected and refused to take him forthwith before some justice of the peace, as required by law.

Appellant, by his pleadings, admits the arrest and imprisonment, and in justification thereof, avers that he was sheriff at the time of the arrest; that he, by his deputies, arrested plaintiff, on view, without warrant, in a place where gaming was being carried on, and where plaintiff was gaming; that he confined plaintiff in the county jail until he could bring him the next day before the County

Court; that early upon the following day a capias was issued upon an information filed against plaintiff in the County Court, under which he was held by defendant until the following day when he was taken before the County Court and afterward discharged.

The material facts, as we believe them to be shown by the evidence, are substantially as follows: Some time between 11 and 12 o'clock on the evening of Wednesday, September 26, 1900, appellee, accompanied by one Chester Smith, went to a saloon conducted by a colored man named Charles Lee. After drinking several glasses of beer at the bar, they entered a rear room of the saloon where a crowd of men, mostly colored, were engaged in playing the gambling game known as "craps." They remained until about midnight, when the place was raided by appellant's deputies, and appellee, Smith, two other white men and some forty colored men arrested and taken to the county jail. At the jail appellee was asked his name by the jailor, and gave that of "George Smith." Between 8 and 9 o'clock of the following morning the state's attorney filed an information in the County Court against all those arrested at Lee's saloon, charging them with gaming, under the names given by them when arrested. A capias was then issued directed to the sheriff, commanding him to bring George Smith and others before the County Court, to answer to said charge. Thereafter appellant claims to have held appellee under this information, although no return was made upon the capias.

Shortly after the issuing of the capias, appellant's deputies went to the jail and proceeded to take the prisoners who were under arrest for gambling, before the County Court, in squads of four. While there is evidence tending to show that the names of all of them were called by the names given by them when arrested and that appellee did not answer, there is other evidence tending to show that the state's attorney ordered those who were willing to plead guilty to be taken into court first, and that appellee's assumed name was not called on that day. Be that as it

may, appellee was not taken before the County Court that morning. At noon the County Court adjourned until the following day, when appellee, who had since his arrest been detained in jail, was taken before the court, and discharged from custody. No process of any kind was at any time served upon him.

Appellant attempts to justify the arrest of appellee under section 342 of the Criminal Code (Rev. Stat. 1903, page 677), which reads as follows: " An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

The greater weight of the evidence fails to show that appellee was engaged in gambling at the time of his arrest. Both appellee and Smith deny that they were at any time in the room where the gambling was being done, during that evening, but testify that when arrested they were at the bar in the front room. In this they are corroborated by the witnesses Clockingay, Milhorn and Lyle. While the witness Parker testifies that appellee was in the rear room watching the playing prior to the arrest, he states further that he did not see him gambling. But one witness, Joseph Richardson, testifies that he saw appellee gambling, and that was at a time prior to the raid.

Appellant, nevertheless, insists that although appellee may not have been gambling at the time they entered the room, the officers had reasonable ground for believing him guilty of the offense, and that under the statute above quoted they were justified in arresting him without a warrant. We are unable to concur in this view of the law. Assuming that the arrest was made for a violation of section 126 of the Criminal Code, by which gambling is made a misdemeanor only, we are of opinion that the statute relied upon fails to justify the arrest of appellee without a warrant. By its express terms the offense must actually have been committed, and unless this appears from the

greater weight of the evidence, the arrest was clearly unlawful.

In an action for trespass and false imprisonment probable cause and the absence of malice constitute no defense. There must be an existing legal cause for the arrest. In this form of action belief in the guilt of the party arrested, no matter how strong or well founded in the mind of the officer or person making the arrest, will not justify the deprivation of another of his liberty; and it is unimportant whether the circumstances would lead a reasonable or prudent person to believe that the accused was actually guilty. Markey v. Griffin, 109 App. 212.

We are therefore of opinion that the jury was warranted in finding that the arrest of appellee was unlawful, and that appellant is liable in trespass, under the first count of the declaration. The detention of appellee after the capias from the County Court was delivered to appellant to execute, was likewise without legal excuse or justification. The capias was placed in appellant's hands by nine o'clock the morning after the arrest. The writ commanded him to bring appellee before the County Court, and in accordance with the statute no bail was fixed or endorsed thereon. The evidence shows that the County Court was in session until noon of that day. While there is evidence tending to show that the failure to take appellee into court was occasioned by his neglect to respond when his assumed name was called at the jail, there is also evidence which would warrant the jury in finding that the delay was occasioned by the fact that a large number of persons were named in the writ and that those who were willing to plead guilty were first given attention. Having in his custody citizens who were, in the eyes of the law, innocent of any crime, it was the duty of appellant, without unnecessary or unreasonable delay, to afford each and all of them an opportunity to be heard or give bail, even if to do so it became necessary for him to procure the aid of additional deputies.

We are unable to say that the jury was not warranted

Wood v. Olson.

in finding that the detention of appellee in jail until the second morning after his arrest, without examination or hearing, was an unreasonable delay under all the circumstances, and such as to render appellant liable for false imprisonment under the second count of the declaration.

In arriving at a verdict it became necessary for the jury to determine whether or not appellee was guilty of gambling, and whether or not the delay in taking him before the County Court was unreasonable. These were questions of fact exclusively for the determination of the jury, and as the evidence relating thereto was conflicting, it was essential that it should have been accurately instructed as to the law.

Appellee's first instruction tells the jury that the presence of appellee in the saloon in question, while gaming was going on therein, would not of itself be sufficient ground for his arrest. In determining whether or not appellee had been guilty of the offense of gambling on the evening in question, it was the duty of the jury to take into consideration the presence of appellee in said saloon before and at the time of his arrest. The instruction was an invasion by the court of the province of the jury. It is erroneous in that it singles out a specific fact shown by the evidence, and which, as we think, tended to prove an ultimate fact at issue, and tells the jury in effect that it did not do so, thus invading the province of the jury. It is not the province of the court to tell the jury what it may or may not infer from certain facts proved in the case. The jury should be left to draw its own conclusions from the evidence. M. L. & T. Co. v. Lamson, 90 App. 18; Graff v. Simmons, 58 Ill. 440.

Appellee's second instruction quotes section 355 of the Criminal Code (Rev. Stat. 1901, page 652), and his third instruction tells the jury that the requirements of that section were binding upon appellant, and that after appellant received the capias from the County Court, it was his duty, without unnecessary delay, to serve the capias and take appellee forthwith before the county judge, and deliver the

capias to the county judge; and unless appellant or his deputies complied with such duties, appellant could not justify the holding of appellee under such capias. The statute quoted does not prescribe or fix the duty of appellant in dealing with appellee in this case, and has no application or relation to the duties of sheriffs under a capias issued under an information; it regulates and prescribes only the duties of officers making arrests under warrants issued by mere committing magistrates.

Section 95 of the statute entitled "Courts," vests the County Court with jurisdiction to try and determine misdemeanors, while section 207 provides that the proceedings where an information is filed in the County Court shall be the same, as near as may be, as upon indictment in the Circuit Court. Section 415 of the Criminal Code requires the circuit clerk, upon the finding of an indictment, to issue immediately a capias for the apprehension of the person indicted, directed to the sheriff of the county where such person then is, or is supposed to be, while section 417 provides that when bail is fixed by the court, the clerk, on the arrest of the defendant, shall, if the process is returnable forthwith, bring the accused immediately into court, where he shall be either committed, bailed or tried, as the court may direct.

It will thus be seen that when the information against appellee was filed in the County Court, it became vested with jurisdiction of the charge against him, and the sheriff had no power or authority to take him before any judge or justice of the peace, after said information was filed, but it became his duty to take him before the County Court when in session. It became the duty of the clerk, under the statute, to issue a capias upon the filing of the information, without any order of the judge, and it was not necessary that the capias should have been returned otherwise than to the County Court, which alone had jurisdiction to try appellee, or to admit him to bail.

The instructions in effect told the jury that if appellant failed to perform certain acts, which he had no right or

Wood v. Olson.

power to do, he was liable for the detention of appellee in prison, from the time the capias came into his hands until appellee was discharged.

The third instruction also told the jury that the capias must have been served without unnecessary delay, and delivered to the county judge, with the sheriff's return thereon, signed by him, and that unless these duties were performed appellant could not justify the holding of appellee under the capias. Inasmuch as appellee was in the custody of the sheriff at the time the capias came into his hands, he was not required by law either to serve the capias or to make any return thereon. The service of the capias by re-arresting appellee would have been a useless and meaningless act. The jury must have understood from the third instruction that appellant was required to arrest appellee under the capias and that a failure to do so would render him liable for false imprisonment. Inasmuch as it was not necessary that appellant should, in order to justify himself in holding appellee, have taken him before any other judge or court than the County Court, or that he should have served the capias, or have made a return upon the same, the instructions referred to were clearly erroneous and prejudicial to the rights of appellant.

The third instruction is erroneous and misleading for the further reason that it required appellant, upon serving the capias, to bring appellee forthwith before the county judge. The law is that a sheriff is liable for false imprisonment on account of a delay in bringing the prisoner into court for examination or trial, only when it is shown that the delay, under all the circumstances, was unreasonable. The direct effect of such instruction was to mislead the jury by causing it to believe that appellant was liable for false imprisonment in case he failed to forthwith produce the defendant for trial, without regard to the surrounding circumstances.

By appellee's seventh instruction the jury was told that under the capias it was the duty of appellant to bring appellee before the County Court. The instruction is not

only inconsistent with appellee's third instruction, which lays down a different rule, but it also ignores and withdraws from the consideration of the jury the evidence which tended to show whether the delay, under all the circumstances, was reasonable or otherwise.

Appellee's eighth instruction tells the jury that if appellee was arrested without a warrant, and appellant failed to take him, without unnecessary delay, before the nearest magistrate or judge, such arrest and consequent detention were unlawful. Under it appellant was liable if he failed to take appellee, without unnecessary delay, before the nearest magistrate, even after the County Court, had acquired jurisdiction by reason of the filing of the information. It incorrectly states the law, and is contradictory to the rules laid down in appellee's second, third and seventh instructions above referred to. It will be seen that different and contradictory rules of conduct are prescribed to govern appellant, by each of appellee's second, third, seventh and eighth instructions.

By the fifth instruction given for appellant, the jury was instructed that after the capias was delivered to appellant, he was not responsible for the further detention of appellee, and that it made no difference that no return was made on the capias by appellant as sheriff. The instruction is directly contradictory to the third given for appellee which tells the jury that unless a return was made upon the capias and signed by appellant, he could not justify thereunder.

The rule of law is that if instructions lay down contradictory rules for the guidance of the jury, which are unexplained, and that following one of such rules might lead to different results than would be arrived at by following the other, then such instructions are defective and misleading. Gilmore v. Fuller, 198 Ill. 130.

Appellant complains of the twelfth instruction given for appellee, upon the ground that it casts upon the defendant the burden of proving that the arrest was made upon reasonable or probable cause. The objection is without merit.

In actions of this nature, where an arrest and imprisonment are shown, it devolves upon the defendant to show a justification thereof.

As the judgment must be reversed for errors in the instructions as above indicated, and remanded for another trial, a discussion or determination as to whether or not the verdict is excessive will be unnecessary.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*