## John Levin, Appellant, v. Thomas H. Costello, Appellee.

### Gen. No. 24,406.

1. MALICIOUS PROSECUTION, § 82*—*when error to direct verdict for defendant.* Directing a verdict for the defendant in malicious prosecution against a police officer for alleged illegal arrest and false imprisonment was error, where the testimony was conflicting on the issues as to whether plaintiff had committed the crime of receiving stolen property, and as to whether he had been illegally restrained of his liberty by reason of unwarranted delay in the matter of opportunity of furnishing bail.

2. FALSE IMPRISONMENT, § 8*—*when police officer liable.* Under the Criminal Code (J. & A. ¶ 4037), providing that an arrest may be made by an officer or by a private person, without warrant, for a criminal offense committed or attempted in his presence, and by an officer when a criminal offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it, an arrest made by an officer without a warrant for alleged crime not committed in his presence is illegal if the crime *has not been actually committed,* and if an arrest is followed by imprisonment, the officer is liable in an action for false imprisonment, notwithstanding he may have had reasonable and probable

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

cause for believing that a crime has been committed by the person so arrested.

3. Malicious prosecution, § 58*—*when burden of proof on defendant*. The burden of establishing the affirmative of the issue as to whether plaintiff in malicious prosecution against an officer had in fact committed the crime of receiving stolen property, was upon the defendant.

4. False imprisonment, § 26*—*when burden of proof on defendant*. Under the Criminal Code (J. & A. ¶ 4037), relating to arrests without a warrant, the establishing of the affirmative of the issue as to whether plaintiff in a suit for false imprisonment against an officer had in fact committed the crime of receiving stolen property was on the defendant, and therefore it was necessary for him to satisfy the jury beyond a reasonable doubt that plaintiff had committed the crime.

5. Arrest, § 22*—*when illegal to fail to place charge against prisoner*. While under the Criminal Code (J. & A. ¶ 4037) a prisoner can be detained over night without being "booked," if it is necessary, a police officer has no right to arbitrarily refuse to place a formal charge against a prisoner so as to prevent him from obtaining bail.

Appeal from the Circuit Court of Cook county; the Hon. Charles H. Bowles, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded. Opinion filed July 2, 1919.

E. C. Mapledoram, for appellant.

Samuel A. Ettelson, for appellee; George Kandlik, of counsel.

Mr. Presiding Justice Thomson delivered the opinion of the court.

The plaintiff, John Levin, brought this action against the defendant, Thomas H. Costello, to recover damages for an alleged illegal arrest and false imprisonment of the said plaintiff by the said defendant, the latter being a captain of the police of the City of Chicago. At the close of all the evidence, on motion of the defendant, the court instructed the jury to return

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a verdict of not guilty. A judgment was entered against the plaintiff for costs, to reverse which he has brought the case to this court on appeal.

The plaintiff had been an owner and operator of a restaurant in the City of Chicago for some years. He purchased a diamond ring from one Cleary for $65. Cleary had been an occasional customer of the restaurant and lived across the street from the restaurant with his mother, brother and sisters. The plaintiff testified that he never had any suspicion of his being a thief. At the time he came in to sell the ring, Cleary said he had won it in a dice game. Within a few days the plaintiff sold the ring to another, through one Gordon, for $150. About a week later two policemen called at the plaintiff's restaurant and in answer to an inquiry from them he stated the facts about his purchase of the ring as given above. They told him the ring had been stolen, whereupon, he testified, he called up Gordon asking him to get in touch with the purchaser of the ring and tell him to hold it as the police had informed him that it was a stolen ring. The plaintiff went over to the police station, several blocks from the restaurant, and talked to the defendant, who told him to go and get the ring and give it to Norton, a detective sergeant at the station. Plaintiff testified that he conferred with his lawyer and saw Norton the following day, telling him that his lawyer had advised him to tell him where the ring could be found, which he did, suggesting that if the police went and saw the ring and had it identified as the one which had been stolen, he would return the money to the man who had purchased it and the police could take the ring, but that Norton told him to go and get the ring as the captain had told him to or "I will slap you into the can." Plaintiff replied that he had told them where the ring was and then he returned to his restaurant. A week later the police came to his restaurant again, saying

that the captain wanted to see him and the plaintiff went over to the station and saw him, whereupon, the plaintiff testified, the defendant, in language far more forceful than elegant, commented on the fact that he had conferred with his lawyer instead of following his directions to go and get the ring and turn it over to Norton and that he replied, "All you have to do is swear a warrant out for me, and book me, and I will * * * furnish the bond." Plaintiff says that the defendant advised him there would be "no booking or bail in this case. I will slap you downstairs, and hold you there, and then send you over on the north side * * * and hold you in the county jail until you rot there, and then I will book you." The plaintiff then asked if he might telephone his wife, which request was refused; that the defendant acted as though he was drunk; that Norton, at the defendant's request, took him to the desk sergeant to whom he was required to deliver his valuables, after which he was locked up in a cell without any warrant or process being served upon him. This was about 8 o'clock in the evening. The following morning a writ of habeas corpus was issued by one of the judges of the Circuit Court, in response to which the plaintiff was taken from his cell about noon and started for the county building in a patrol wagon, stopping at another police station on the way, where one of the officers got out and procured a warrant. When they arrived at the court room of the judge who had issued the habeas corpus writ, it appearing that a warrant had been issued, the plaintiff was remanded to the custody of the police and was immediately taken before one of the judges of the Municipal Court and the amount of his bail being fixed, he was soon released on proper bonds. The warrant charged the plaintiff with receiving stolen property. Shortly thereafter, upon a hearing in the Municipal Court on this charge, Levin was discharged, the prosecuting witness from whom the ring was alleged to have

been stolen having taken the witness stand and testi-
fied that the ring in question was not her ring. After
his discharge Levin returned to the police station for
his valuables and signed a receipt for them in a book
in which a list of them was recorded and he testified
that he noticed the words "no charge" written across
the page containing a list of his belongings. About
10 o'clock on the evening of the plaintiff's arrest and
imprisonment, one Olson visited the station and saw
the sergeant and lieutenant, asking permission to see
Levin, stating that he wanted to furnish a bond for
his release. He was not permitted to see him. About
midnight, one McDowell, a lieutenant of police attached
to a different station, who had known the plaintiff for
about 8 years, talked with the defendant Captain Cos-
tello asking him what he had the plaintiff locked up
for and if there was any chance to have him booked
that night, and the defendant replied that he had him
locked up for receiving stolen property and that he
would not book him that night.

The defendant testified that he learned that Cleary
and one Findlay had committed a robbery involving
some jewelry. Cleary was never apprehended but
Findlay was and he told the defendant that they had
sold one of the rings they had stolen to the plaintiff.
He testified further that when the plaintiff first came
to the station he asked for 24 hours to bring the ring
in, which he granted, and that a week having gone by
without anything being done, he sent for the plaintiff
again and that this time the plaintiff told him he had
seen his lawyer and that you "haven't got a damn
thing to do with it"; that he told the plaintiff he would
lock him up for receiving stolen property if he did not
bring the ring in and the plaintiff replied, "Go ahead
and lock me up." The defendant took the position
that he was justified in believing that the plaintiff was
guilty of the crime of receiving stolen property because
he admitted buying a ring from Cleary for $50 or $65

and selling it for $150, and refusing to bring it in to the station. He testified: "When he would not give the ring to me or Norton I made up my mind to put him down in a cell. * * * I told the desk sergeant to lock him up for committing a felony. I would not permit Levin to give a bond because we had to investigate." The defendant alleged that he was sober on the night of the arrest and that the plaintiff did not ask to telephone to his wife before he put him in a cell. There was other testimony by the officers who visited the plaintiff on the occasions referred to at the restaurant which is not important.

On this conflicting testimony the issues involved should have been submitted to the jury, and it was error to instruct them to return a verdict of not guilty. Paragraph 4037 (J. & A. Illinois Statutes) of our Criminal Code provides as follows: "An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it." Where an officer makes an arrest without a warrant for an alleged crime which has not been committed in his presence, such arrest is illegal if the crime has *not actually been committed*, and if an arrest is followed by imprisonment, the officer will be liable in an action for false imprisonment notwithstanding he may have had reasonable and probable cause for believing that a crime had been committed by the person so arrested. *Wood v. Olson,* 117 Ill. App. 128; *Markey v. Griffin,* 109 Ill. App. 212. In such a case the absence of malice or the presence of probable cause constitutes no defense, and the allegations in the declaration alleging malice or the want of reasonable or probable cause on the part of the defendant are surplusage. *Johnson v. Von Kettler,* 84 Ill. 315; *Wood v. Olson, supra; Markey v. Griffin, su-*

*pra.* These cases are in point although they did not involve the charge of a felony; the same rules have been applied in a situation where the plaintiff had been charged with the commission of a felony. *Hight v. Naylor,* 86 Ill. App. 508.

Under the law and the evidence in the record in this case there were two questions for the jury to determine. The first one was as to whether the plaintiff had in fact committed the crime of receiving stolen property. The burden of establishing the affirmative of that issue was upon the defendant. *Conkling v. Whitmore,* 132 Ill. App. 574; *Wood v. Olson, supra.* In view of the provisions of our statute as quoted above, this is a necessary element of a successful defense in an action for false imprisonment, and therefore it would be necessary for the defendant to satisfy the jury, beyond a reasonable doubt, that the plaintiff had committed the crime of receiving stolen property. *McConnel v. Delaware Mut. Safety Ins. Co.,* 18 Ill. 228; *Harbison v. Shook,* 41 Ill. 141; *Sprague v. Dodge,* 48 Ill. 142; *Germania Fire Ins. Co. v. Klewer,* 129 Ill. 599; *McInturff v. Insurance Co. of North America,* 248 Ill. 92.

The second issue for the jury to determine in this case was whether the plaintiff had been illegally deprived of his liberty, by reason of an unreasonable and unwarranted delay by the defendant in giving him an opportunity to furnish bail. While, under our statutes, a prisoner can be detained over night without being "booked," if it is necessary, a police officer has no right to arbitrarily refuse to place a formal charge against a prisoner so as to prevent him from obtaining bail. It is true, as the defendant contends, that he did not have the power to fix Levin's bail or accept his bond, but it is further true, that the law does not give him the power to determine that a prisoner should be deprived of the opportunity of furnishing bail, and it is his duty to "book" the prisoner upon a definite

charge as soon as that can reasonably be done, so that an application may be made in his behalf, before the proper authority, for the fixing of bail and the providing of a proper bond. *Markey v. Griffin, supra.* A prisoner might be guilty, yet, if he was illegally restrained of his liberty, the person so illegally restraining him would be guilty of false imprisonment and liable for at least nominal damages. *Conkling v. Whitmore, supra.*

We, of course, do not presume to pass upon the merits of the issues we have referred to. It was error not to submit these issues to the jury for their determination. It might be that they would have concluded, from the evidence beyond a reasonable doubt, that the plaintiff had committed the crime of receiving stolen property and that he had not been illegally restrained of his liberty, by reason of any unwarranted delay in the matter of opportunity of furnishing bail, in which case their verdict would have been not guilty, or they might have determined either of the issues the other way, in which case they would be at liberty to assess proper damages.

For the reasons stated and in order that the issues may be submitted to a jury, the judgment of the Circuit Court is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*