## PETER PAGE and FREDERICK BECKER

*v.*

## EMMA E. DE PUY.

1. LANDLORD — *entry upon the possession of a tenant or occupant.* A landlord may enter peaceably upon his own premises of his tenant, either during the term or after its expiration, or while in the possession of a wrong-doer, for a lawful purpose, but has no right to make a forcible entry, or, if, after entering for a lawful purpose, he shall injure the occupant or his property, the owner will render himself liable to an action, and cannot justify under the plea of *liberum tenementum.*

2. LEASE — *tenant holding over contrary to lease.* Where a tenant covenants in the lease, that, in case he shall hold over after his term expires or is ended, the landlord may enter and use such force as is necessary to expel the tenant and to regain possession ; if he holds over, and the landlord enters and puts the tenant off, with his property, the latter cannot maintain an action, unless more force was used than necessary, either in making the entry or in putting the tenant or his property off. In a case where the entry is by permission, and excesses are committed, either to the person or the property of the tenant, a recovery could be had in another form of action.

3. WRIT — *entry under by officer to deliver possession.* Where an officer holds a writ of possession to execute, he may, if necessary, summon assistance, and he and they will be justified in entering upon the premises, and in the employment of reasonable and necessary force to remove the occupant and his property.

4. SAME — *entry under — abuse of authority.* Where an officer and his bailiffs enter under a writ of possession, as they lawfully may, and a person is left in possession during the night, and lies on the bed of the tenant, such act cannot, as a matter of law, be said to render the entry a trespass *ab initio,* while an abuse of authority will; but every trifling departure from authority will not have that effect. To have that effect, the act must be of that character as to give color to the belief that the legal authority was employed as a means of committing the wrong complained of by plaintiff.

5. TRESPASS — *when it lies.* If an entry is made under a license, and wrongs are committed by force, either to the person or property, an action will

lie for the trespass to the person or property, but not *quare clausum fregit*. The entry being permitted by the occupant, a subsequent wrong does not render it a trespass *ab initio*.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an action of trespass *quare clausum fregit*, brought by Emma E. De Puy, in the Circuit Court of Cook county, against Peter Page, Frederick Becker, and a number of other persons. The declaration proceeded for breaking and entering a close and committing wrongs thereon. Defendants justified under authority contained in a lease from Page to plaintiff, and under a writ of possession in the hands of a constable, claiming that they acted under his authority.

A *nolle prosequi* was entered to all of the defendants except Page and Becker, and a trial was had by the court and a jury, resulting in a verdict and judgment in favor of plaintiff for $2,500; to reverse which defendants bring the case to this court by appeal.

Mr. C. BECKWITH, for the appellants.

Messrs. BORDEN & SPAFFORD and W. K. McALLISTER, for the appellee.

Mr. CHIEF-JUSTICE WALKER delivered the opinion of the Court.

This was an action of trespass *quare clausum fregit*, brought by appellee, in the Cook Circuit Court, against appellants and several other persons. The declaration contained four counts, for breaking and entering plaintiff's close. The first two were for trespasses alleged to have been committed in the month of October, 1864, and the other two for trespasses alleged to have been committed in May, 1865. There were filed a large number of pleas, but appellee having entered a *nolle prosequi* as to all of the defendants but appellants, before the trial in the court below, the record has been thus disincumbered of all but the pleas of appellants, and the replications to them. A trial

was had by a jury, resulting in a verdict against defendants below for the sum of $2,500 damages. A motion for a new trial was entered which was overruled by the court, and judgment was rendered on the verdict.

It appears that the brother of appellee, on the 28th day of September, 1864, paid to Page two hundred and fifty dollars as three months' rent of the house, out of which this controversy has arisen, and took his receipt for the same. The receipt states that the term was to commence on the first of the next October, and to end on the first day of May, 1865, at the rate of one thousand dollars per annum, and the rent to be paid monthly after the expiration of three months; and in case of fire, Page agreed to refund *pro rata* the advanced rent. At the time this receipt was given the house was occupied by another tenant whose term did not expire until the first of October, two days after the receipt was given. It appears that this tenant did not vacate the house until the fourth of October, but appellee seems to have gone into the house with that tenant as early as the third, and removed some of her property into the building. After the former tenant had left the house, Page, on the fifth of October, with one Smith, went into the house, and seeing Mrs. Otto, the former tenant, demanded of her the possession, but she informed him that she was unable to deliver possession, as appellee was there and had removed some of her property into the house. He then saw appellee who claimed to be in possession, and she refused to leave, claiming to be in under the lease to her brother. It seems that he left Smith there, and in the afternoon sent appellant Becker, and two or three others. It seems that she regained possession by having the persons placed in possession arrested. It also seems that afterward, Page executed a lease to George S. De Puy and appellee for the house in controversy, dated the first day of October, 1864, by which he demised the premises to them from that date until the first day of May following, for the sum of $583.33, two hundred and fifty dollars of that sum being for advanced rent for three months, and the balance for the remainder of the term.

After this lease was executed, Page, by an indorsement on the back of the lease, authorized George S. De Puy to assign his interest in the lease to appellee, and in case of such assignment releasing him from his covenants and all liability under the lease. Appellee, it appears, remained in possession of the premises until the end of the term, and, failing to surrender possession, Page brought an action of forcible detainer, recovered judgment, and afterward sued out a writ of possession, which was placed in the hands of a constable to execute, who went on the premises to execute the writ, and at the time, or a few minutes before he arrived, Page sent a number of his assistants and employees to aid in removing the property. It seems that the balance of the day, from about noon, was spent in altercation, and efforts to get appellee to remove her property, until, as appellants claim, it was too late to remove the property, and some of the persons were left in the house until next morning, when her goods and furniture were put out, placed on the pavement, and her teams removed it to some other place. Of the persons who were there on this occasion, appellant Becker was one who assisted. It also appears from the evidence, that one of the men left in the house during the night lay down and slept upon one of appellee's beds. She also claims that her property was injured and her trunks were broken open and a sum of money stolen.

As to the alleged trespass in October, Page relies upon the plea of *liberum tenementum* as a justification, and Becker justifies his entry under the command of Page as the owner of the freehold. As a defense to the alleged trespasses in May, they justify under the lease and under the writ of possession under the authority of the constable. There was also a plea of accord and satisfaction to the two first counts, which were for the alleged trespass of October, 1864. There were a number of other issues, but we regard it unimportant to discuss them.

It is not disputed that Page was the owner of the premises in fee; nor is it disputed that appellee was in possession, either rightfully or wrongfully, on the fifth of October, when appel-

lants entered into the house and made efforts to dispossess her, and that she refused to depart when requested. This, then, presents the question whether appellants can justify such a forcible entry by reason of the ownership of the property by Page. While it is true the owner of the fee may peaceably enter upon his premises in the possession of his tenant, either during the term or after it has expired, or the possession of a wrong-doer, for a lawful purpose, he has no right to make a forcible entry, or, after having lawfully entered, to inflict injury upon the person or property of the occupant. While there seems to be some conflict in the authorities, the current seems to announce the rule, that the owner cannot, under the plea of *liberum tenementum*, justify an entry which would be actionable under the forcible entry and detainer laws. And we have, at the present term of this court, adopted it as the more reasonable rule, in the case of *Rider* v. *Purdy*. The entry of Page, then, in October, 1864, if of that character, would subject him to an action of trespass *quare clausum fregit*. If such an entry were unaccompanied with wrongs to the person or property of appellee he would be liable for nominal damages only, but if the entry was accompanied with wrong and indignities to her, then to such damages as a jury think reasonable under the circumstances.

The question of whether there was proved an accord and satisfaction was for the consideration of the jury; and as the case must go before another jury, we refrain from the expression of any opinion on the question.

We now come to the consideration of the defenses interposed to the alleged trespasses in May, 1865; and, first, of the right to enter under the lease and reclaim possession. It is insisted, that, by the terms of the lease of October, 1864, Page and those acting under his authority were justified in making an entry and employing all of the force necessary to eject appellee from the premises. The lease was executed by appellant, and was signed by appellee and her brother, and it contained this provision: "And the lessees covenant with Page, among other things, that, at the expiration of the term, or sooner determi-.

nation thereof by forfeiture, they will yield up the premises to him in good condition, etc., and keep the premises in good repair; and further agree, that, if the rent shall be behind or default made in the covenants, it shall be lawful for Page to declare the term ended, and into said premises, with or without process of law, to re-enter and to expel, remove, and put out lessees, using such force as may be necessary in so doing. And if at any time said term shall be ended at such election of said party of the first part, or in any other way, the said party of the second part hereby covenant and agree to surrender and deliver up said premises peaceably to said party of the first part, immediately upon the determination of the term as aforesaid, and if he shall remain in possession of the same after such default, or after the termination of this lease in any of the ways above named, he shall be deemed guilty of a forcible detainer of said premises under the statute, and shall be subject to all the conditions and provisions above named and to eviction and removal, forcibly or otherwise, with or without process of law as above stated."

From these covenants we are at a loss to perceive how appellant, after the expiration of the lease, could be guilty of a trespass in going upon the premises and in removing appellee and her property, using only such force as was necessary. It seems to us, in such a case, the entry is undeniably justified because appellee authorized it to be made. And the law does not prevent a person from giving such authority. *Ambrose* v. *Root*, 11 Ill. 497. And the entry and expulsion were fully justified unless the force was excessive, either in making the entry or in removing her or her property afterward. In any event, she licensed the entry which rendered it lawful; and if excesses were afterward committed, either to the person or personal property, a recovery cannot be had in this form of action. *Six Carpenters' case*, 8 Coke, 146; *Allen* v. *Crofoot*, 3 Wend. 506.

It is again insisted, that the writ of restitution in the hands of the constable authorized the entry and constituted a complete justification. It undeniably did as to himself and those

acting under his authority, unless he abused the authority thus conferred. *Six Carpenters' case*, 8 Coke, 146. He was authorized, in executing the writ, to summon persons to aid him in the delivery of the possession, and in the removal of the property from the premises. Persons thus engaged could justify under his authority. If he called upon appellant to furnish persons to assist him, and they were sent, and he received and controlled their actions, they were acting under his authority as fully as if he had summoned or employed them in the first place. And in executing the writ the officer would be justified in the use of all reasonable force necessary to remove the property or the occupant against whom the writ was issued. It is the plain duty of a tenant at the end of the term to vacate the premises and restore possession to the landlord; and by failing to do so, he invites the force that the law will employ to compel obedience to its process requiring the restoration of possession.

It is urged that the court below erred in giving appellee's sixth instruction. It is this:

"The jury are instructed, that if they believe, from the evidence in this case, that the first entry in May was for the purpose of executing a legal writ, and that, after the first entry into said house in the month of May, 1865, the writ of restitution given in evidence in this cause was delivered to Bogue to be executed, yet, if, in the course of the execution thereof, the parties, or any of them, acting under the direction and by the solicitation and command of the defendants, broke and unnecessarily injured and abused the furniture of the plaintiff, used her beds, or any of them, by sleeping on them, or took and converted a portion of her personal property, being in said house at said time, then the defendants became and were trespassers from the beginning, and said writ is no protection to the defendants."

The evidence upon that portion relating to the use of appellee's beds, is based upon the fact that one of the men who remained in the house during the night lay down on a bed a

portion of the time. We are at a loss to perceive how such an act can be said to render the lawful entry of the officer and those acting under him, as a matter of law, a trespass *ab initio*. The willful abuse of the authority would have that effect, but the law will not say that such an act was such an abuse. That was a question for the jury under proper instructions. It is not every trifling departure from the authority conferred by the writ which will have that effect, but such acts only as in themselves would amount to a trespass had the entry not been made under legal authority. To render the officer a trespasser *ab initio*, there must be some positive wrongful act, as an abuse of the authority which seems to give character to the original lawful act, and which inclines to the belief that the legal authority was only employed for the purpose of enabling the officer to obtain the means of committing the wrong — this seems to be the rule. *Stoughton* v. *Mott*, 25 Vt. 668. The court below therefore erred by informing the jury that the use of appellee's beds constituted such an abuse of authority.

Again, if this entry was made under the clause in the lease giving a license to enter and employ all necessary force to acquire possession, then any wrongs subsequently committed by appellants would not render the entry illegal. If the license to enter was abused by unlawful acts against the person of appellee or her property, she might, no doubt, maintain an action for the trespass to the person or property, but not for a trespass *quare clausum fregit*. And as the license given for the entry by the lease was relied upon by the defense, the entire instruction would be wrong if the entry was so made. So that whether the entry was made by the officer or under the lease, in either case the instruction was wrong. The judgment of the court below must therefore be reversed and the cause remanded.

*Judgment reversed.*