## FRIESENHAN v. MAINES.

1. FALSE IMPRISONMENT—LEGAL ARREST—UNLAWFUL DETENTION—TRESPASS AB INITIO.

   An unlawful detention following a lawful arrest by a sheriff does not make him a trespasser *ab initio*, unless the original arrest was made with the intent of being used as a cover for a subsequent wrong.

2. SAME—HABEAS CORPUS—DISCHARGE—RES JUDICATA.

   Where a petition for *habeas corpus* showed that the prisoner had been detained an unreasonable time without an opportunity of giving bail, and made no claim that the arrest was illegal, and no testimony was taken, and no order discharging the prisoner could be found, but it was shown by parol that he had been discharged on the ground of an unreasonable detention, the discharge was not an adjudication that the arrest was illegal.

3. HABEAS CORPUS—DISCHARGE—PAROL EVIDENCE.

   Where no order discharging a prisoner on *habeas corpus* proceedings is found, parol evidence is competent to show the ground on which the discharge was based.

4. SAME—FALSE IMPRISONMENT—EVIDENCE—MITIGATION OF DAMAGES.

   In an action for false imprisonment, plaintiff's subsequent admission of guilt of the charge on which he was arrested is admissible in mitigation of damages, although he was discharged on *habeas corpus* on the ground of an unlawful detention.

5. FALSE IMPRISONMENT—DAMAGES—COSTS OF HABEAS CORPUS PROCEEDINGS.

   In an action for false imprisonment, plaintiff is not entitled to recover attorney fees incurred in *habeas corpus* proceedings for his release, where such proceedings were instituted by his father without his consent, and the attorneys were not employed by him.

6. SAME—TRIAL—ARGUMENT OF COUNSEL.

   Where a confessed seducer brought an action for false imprisonment because he was detained in jail two days without being brought before a magistrate, it was permissible for de-

fendant's counsel to indulge in severe criticism in his argument to the jury.

Error to St. Clair; Law, J.   Submitted April 7, 1904.
(Docket No. 19.)   Decided June 25, 1904.

Case by Joseph Friesenhan against Harrison W. Maines for false imprisonment.   From a judgment for plaintiff for nominal damages only, he brings error.   Affirmed.

This is an action upon the case for false imprisonment. The essential facts are as follows:   On Friday, January 31, 1902, one Mrs. Halliday, who lives in Sanilac county, with her daughter Mrs. Norris, of Port Huron, called on the defendant, who was then the sheriff of St. Clair county. Mrs. Halliday told defendant that she had a daughter who had been keeping company with the plaintiff right along with the intention and promise of marriage; that she was now about to be confined, and for that reason could not come out of the house.   Defendant talked with Mrs. Halliday for some time, and she stated that plaintiff had promised to marry this daughter, and she also showed him several letters written by plaintiff to her daughter.   Defendant then told these ladies to go to the prosecuting attorney's office, and they went away together.   She and her daughter then called upon the assistant prosecuting attorney, Mr. Alex. Moore, Deputy Sheriff Shannon coming into Mr. Moore's private office with them.   Mrs. Halliday stated, in substance, to Mr. Moore and Mr. Shannon that Joseph Friesenhan had seduced her daughter Almira, and that she was not in a condition to come to the office by reason of sickness.   She produced the letters above mentioned. She stated that she had had a conversation with Joseph Friesenhan about 30 days prior to the time she came to Mr. Moore's office, and that plaintiff had admitted to her that he was the cause of the girl's trouble, and had said that he would right the wrong by marrying the girl.   She said he had apparently changed his mind, or was neglect-

ing the girl, and that she had come to Port Huron to protect her daughter. The daughter had been stopping with Mrs. Norris in Port Huron. Mr. Moore thereupon told Deputy Sheriff Shannon that the cause of action as stated was a felony, and that, inasmuch as Mrs. Halliday was here from Sanilac county, it might become known to the plaintiff that she was here, and he might leave, and that he (Moore) wanted him (Shannon) to take plaintiff in charge that night. Deputy Sheriff Shannon then went to Sheriff Maines. This was about 6 p. m. Shannon told the sheriff that young Friesenhan had got a girl in trouble, and that Alex. Moore wanted him to go out and get him at once, as he (Moore) was afraid the plaintiff would hear what was going on, and would get out of the country.

Defendant and Deputy Shannon then drove to the home of plaintiff. Mr. Shannon went in, and brought out plaintiff, and the three rode back to the jail together. On the way back plaintiff wanted to know what they were taking him for. Defendant told him for getting a girl in trouble, and plaintiff answered, "Which one?" Defendant told him it was a girl who used to live in Sanilac county, and plaintiff answered, "Oh, yes, I know; I can fix that matter up if I can see the girl." Mr. Shannon took plaintiff to the jail. The next day Mr. Moore went over to the sheriff's office. Defendant brought plaintiff into the office, and Moore talked the matter over with him. After explaining to plaintiff who he was, and telling him that any statement he might make would be used either for or against him, as he might see fit, he explained the charge which had been brought against him, and asked the plaintiff if he had anything to say about the matter. Plaintiff thereupon stated that he had promised to marry the girl, and that upon said promise he had intercourse with her. He said that he had seduced her in Port Huron about the month of April, and admitted writing the letters. He also stated that he would not marry the girl.

At the time Mrs. Halliday and Mrs. Norris were in Mr.
Moore's office, Mr. Moore prepared a complaint and war-
rant in the name of Mrs. Halliday, and called Justice
George to his office to sign the same, but afterwards
changed his mind, deciding that it would be better for the
girl to make the complaint. He accordingly changed the
name, handed the complaint and warrant to Justice
George, and requested him to go up to the girl's residence
Saturday morning, and take the complaint. This Justice
George was unable to do, by reason of his official business,
until Monday morning.

On Saturday evening, February 1, 1902, the day after
the arrest, Mr. Hovey, one of the attorneys for the plain-
tiff, went to the office of Justice Wagner, and asked him
if he knew anything about the case of the *People* v.
*Friesenhan*, to which the latter replied that he did not
know anything about it; that no complaint had been
made to him, and that he had issued no warrant; that he
had been busy in the circuit court, and had turned over
all matters to Justice George. Justice George came in at
this point, and told them that he had issued no warrant.
Justice Wagner then said that he was powerless in the
matter. Mr. Hovey agreed with him, but said he could
remedy the situation by *habeas corpus,* saying he was
sure he had a case to base his *habeas corpus* proceedings
upon, and that he would make somebody pay for it.

On Monday morning, February 3d, Mathew Friesenhan,
plaintiff's father, petitioned for and obtained a writ of
*habeas corpus.* The sheriff answered the writ, a hearing
was had, and an order made discharging plaintiff. No
testimony was taken at the hearing.

Another complaint was made and another warrant
issued, and plaintiff was again arrested. On Thursday
evening, February 6, 1902, plaintiff married Almira
Halliday. That evening he had a talk with Mr. Alex.
Moore, in which he told Mr. Moore that he wanted the
marriage to end all the trouble; that the action against the
sheriff was not of his instigation, and that he did not

want it, but that it was at the instigation of his father and Mr. Hovey.

Mr. Hovey testified that he paid out for the *habeas corpus* proceedings the sum of $4.13, and that he charged the plaintiff for his services $50. He also testified that he had books of account, had this charged in them, and upon request he brought his books into court, but then refused to produce them. Plaintiff recovered a verdict of six cents.

*Hovey & Stockwell*, for appellant.

*Avery Bros. & Walsh* and *Cady & Crandall*, for appellee.

GRANT, J. (*after stating the facts*). There are 52 assignments of error. We will mention and dispose of those we deem of sufficient importance to discuss.

1. The court instructed the jury that the crime of seduction is a felony, and that, under the undisputed evidence, the arrest of the plaintiff by the defendant without a warrant was justifiable, and that the facts placed before defendant justified him in believing that plaintiff was guilty of the crime. That he was in fact guilty is established beyond controversy. The instruction was correct.

Plaintiff, however, contends that, though the arrest was legal, the unlawful detention made defendant a trespasser *ab initio*. The rule invoked has no application to this case. That rule is applied to cases where the legal arrest is used as a cover to subsequent illegal conduct. There is no evidence in this case even tending to show that the arrest was made with any intent to detain plaintiff an unreasonable time, or to do him any other wrong. In such case the legality of the arrest is not tainted by the subsequent illegal detention. *Taylor* v. *Jones*, 42 N. H. 25; *Page* v. *De Puy*, 40 Ill. 506; *Griel* v. *Hunter*, 40 Ala. 542.

2. The court instructed the jury that the discharge of the plaintiff on *habeas corpus* proceedings was a final

adjudication that the detention was illegal. Plaintiff's counsel insist that it also was conclusive that the arrest was illegal. No testimony was taken upon that hearing. The petition of plaintiff's father for the writ of *habeas corpus* averred that two justices of the peace had offices within 100 feet of the jail, and that plaintiff had been detained during that time without bail, and without being brought before a magistrate having authority to admit to bail. No claim is made in the petition that the arrest was illegal. The return of the defendant to the writ stated the circumstances of the arrest. It was also shown by parol evidence—no order of the circuit judge being found—that plaintiff was discharged from custody because he had been detained for an unreasonable length of time. It seems clear that, under these circumstances, the discharge was not and could not have been based upon the illegality of the arrest, and that plaintiff's father did not ask for his discharge upon that ground. It follows that the instruction of the judge was correct. It was also competent to show the reason on which the discharge was based.

3. Plaintiff's subsequent admission of guilt was admissible in mitigation of damages.

4. Error is assigned upon the refusal of the judge to instruct the jury to allow plaintiff as damages the cost of the *habeas corpus* proceedings, amounting to $54.13. The request was properly refused. There was testimony that the plaintiff had no hand in bringing that suit; that it was brought by his father; and that he desired his marriage with the girl to end all litigation growing out of the affair, including this suit. The court instructed the jury that, if the attorneys were employed by plaintiff either expressly or impliedly, they should include those expenses in their verdict. The evidence justified the instruction.

5. Complaint is made that the attorney for the defendant, in his argument to the jury, used language not justifiable by the record. The entire argument of the attorney is printed in the record. We find nothing in it to con-

demn. A confessed seducer was asking damages because he was detained in jail two days without being brought before a magistrate. The occasion and the facts justified severe criticism.

We find no error in the record, and the judgment is affirmed.

The other Justices concurred.