Forrest L. Shaw, Appellee, v. Thomas J. Courtney
et al., Defendants.
Appeal of Steve Leddy et al., Appellants.

Gen. No. 42,225.

Opinion filed January 25, 1943.

THOMAS J. COURTNEY, State's Attorney, and JACOB SHAMBERG, Assistant State's Attorney, for appellants.

EDGAR BERNHARD and CHARLES LIEBMAN, both of Chicago, for appellee; NATHAN WOLFBERG and MORRIS H. SACHS, both of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This cause was tried on an amended complaint of two counts filed May 13, 1939. In substance the first count charged defendant Courtney and his associates and others named, each acting in behalf of himself and all

the others, on May 15, 1937, assaulted and beat the plaintiff. The second count charged unlawful imprisonment (from May 15, 1937, until the 21st day of the same month). Defendants answered denying material averments and the cause was tried by jury. During the trial the cause was dismissed as to defendants Crowley and Lynch. At the close of all the evidence the court directed a verdict in favor of Courtney. The cause was submitted as to defendants Kenneally, Sponder, Leddy and O'Connor, all of the State's Attorney's office. A special interrogatory was submitted to the jury as to each of these, whether their conduct severally was wilful, wanton and with malicious intent. The jury answered each interrogatory in the affirmative; also returned separate verdicts of guilty against each defendant. The damages assessed were $5,000 against O'Connor, $1,500 against Kenneally, $1,500 against Sponder, and $2,000 against Leddy. The court entered judgments against each of them on the respective verdicts for a total of $10,000. Defendants appeal.

Pending his appeal O'Connor died, and leave has been given his executrix to be substituted and to adopt the briefs of her coappellants.

It is urged for reversal that the court erred in instructing the jury and in entering the several judgments in the absence of a statute authorizing an apportionment of damages against joint tort-feasors; also that the verdicts were the result of passion and prejudice.

At the time of the occurrence of the matters complained of plaintiff lived at 1500 Lunt avenue and was a securities salesman working for Matthews, Lynch & Company. O'Connor was chief clerk of the downtown office of the State's Attorney. He was also charged with assisting in investigations made in connection with the enforcement of the Blue Sky Law.

May 15, 1937, Mr. Jerome J. Crowley, an attorney, not defendant Crowley made complaint to the office

against plaintiff with reference to stocks and securities which plaintiff was said to have improperly obtained from Miss Mayne McKenny. O'Connor directed Leddy and either Kenneally or Sponder (also officers working in the Blue Sky Department) to go out and look for plaintiff. The officers went out and got Shaw and brought him in about 6:30 p. m., the same day.

There is much conflict in the evidence as to the manner in which plaintiff was treated while in charge of these officers. He testifies that he was beaten, kicked, etc. The defendants deny this and say that plaintiff stayed with them voluntarily, telling them he had a son in Northwestern University and wished to avoid publicity. It is admitted the officers who went to plaintiff's home persuaded him to go along with them by a false story to the effect that someone at the police station claimed plaintiff's automobile had been in a collision. Defendants deny any and all kinds of violence. It is admitted they refused for a time to let plaintiff communicate with an attorney, and the jury may well have doubted their testimony to the effect that their dealings with plaintiff were marked by gentleness and consideration. On the other hand, plaintiff probably exaggerates the alleged ill-treatment. Plaintiff was afterward indicted on matters growing out of his dealings with Miss McKenny. There was trial by a jury, which disagreed. He then settled by returning to her a large part of the securities he had obtained from her.

Defendants with other reasons allege the judgment should be reversed for error in several instructions. It is argued the court erred in giving an instruction as to punitive damages in part as follows:

". . . The amount of damage, in case you find for the plaintiff and against such defendants, or any or either of them, you are to ascertain by basing your findings upon the extent of the plaintiff's actual injuries, if any is shown by the evidence. And in case the jury believe from the evidence that *the assault and false*

*imprisonment* was wanton, reckless or vicious, then the jury may add to such actual damages, if any they find, such a sum as they may believe from the evidence would be reasonable and just, as smart money or punishment.''

This instruction is, we hold, subject to criticism. In the first place it assumes the defendants (all of them) were guilty of both assault and false imprisonment, and that punitive damages might be allowed therefor. All these questions were for the jury. *Collins v. Waters,* 54 Ill. 485; *Eshelman v. Rawalt,* 298 Ill. 192. The objections to this instruction are closely connected with the further questions discussed at length in the briefs of both parties (and later noticed), namely, whether in the absence of a statute authorizing the jury may apportion damages among joint tort-feasors.

Complaint is also made of this instruction:

''It is the duty of an officer who makes an arrest without a warrant to bring the person arrested before a court within a reasonable time in order that the court may inquire into the cause of the arrest and fix bail if bail is demanded.

''You are further instructed that when an officer makes an arrest which is lawful his failure to bring the person arrested before a magistrate within a reasonable time makes the original arrest unlawful and the detention is a false imprisonment.''

We hold this instruction does not accurately state the law of this State. *Page v. DePuy,* 40 Ill. 506. The rule stated is only applicable and proper when applied to cases where the original arrest was made for the purpose of obtaining the means to commit a subsequent wrong. *Brown v. Meier & Frank Co.,* 160 Ore. 608, 86 P. (2d) 79; *Friesenhan v. Maines,* 137 Mich. 10, 100 N. W. 172. Plaintiff cites sec. 660 of ch. 38, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 37.635] with *Levin v. Costello,* 214 Ill. App. 505, and 25 C. J., sec. 61, page 491. He says the evidence would have justified a

finding that defendants Sponder and Leddy had such an intention to commit a subsequent wrong at the time of the arrest. The instruction was not limited to these two, nor did it put this issue to the jury to decide as a fact. The instruction purported to tell the jury the law it was bound to follow. We hold it erroneous. Counsel for plaintiff in their brief, after quoting the instruction and par. 660 of ch. 38, Ill. Rev. Stat. 1941, cite and discuss cases from Illinois and then conclude the point in their brief by the following: "Under any circumstances we believe that the question was properly one for the jury and that the jury was correctly instructed under the statutory and common law of this State." The difficulty with this argument, we think, is that the instruction did not leave any question to the jury. The instruction told the jury that when an officer made an arrest which was lawful, his failure to bring the person arrested before a magistrate within a reasonable time, made the original arrest unlawful. And we think other instructions did not cure this objection—the jury was apt to be misled.

Complaint is also made that the court instructed the jury:

"If you find from the evidence under the instructions of the court that any defendant is guilty of false imprisonment in this case, then you are further instructed that the law implies malice on the part of such defendant, *and you should so find.*"

The Supreme Court has held in *Lindquist v. Friedman's, Inc.,* 366 Ill. 232: "The question of malice is one of fact for the jury." Plaintiff relies on *Pinkerton v. Martin,* 82 Ill. App. 589, where the court said that under the circumstances the law implied malice. The cases are quite distinguishable on the facts. At any rate, the word of the Supreme Court is final with this court.

Again, plaintiff refers to the conduct of Sponder, who was one of several defendants. Even if the in-

struction was justified as to him it would not have been justified as to other defendants. It was error to give it.

Defendants have raised and the parties have argued quite at length the question to which we have already alluded of whether a jury in the absence of a statute authorizing it may apportion damages among joint tort-feasors. Plaintiff concedes that prior to the enactment of the Civil Practice Act that was not permissible in this State. *Livak v. Chicago & Erie Ry. Co.*, 299 Ill. 218. However, plaintiff cites sections 4, 24, 43(1), 44(1) and 50(1) of the Civil Practice Act [Jones Ill. Stats. Ann. 104.004, 104.024, 104.043, 104.044, 104.050] and argues that, rightly construed, section 50 authorizes the jury to so apportion damages. Plaintiff says (rightly, we think) that he could have sued each defendant separately and obtained separate judgments (*Blanchard v. Burbank*, 16 Ill. App. 375; *Nordhaus v. Vandalia R. Co.*, 242 Ill. 166) and that under the liberal provisions of the Civil Practice Act he may now sue all together. He cites Illinois Practice Act Ann., 1933, McCaskill, p. 123, and Harrow's Illinois Practice Manual, § 50, page 179.

Section 50 of the Civil Practice Act seems to have been taken from the New Jersey statute of 1912. Defendants point out that in *Tricoli v. Centalanza*, 100 N. J. L. 231, 126 Atl. 214, the Supreme Court of New Jersey held in a suit of this kind:

''The court will not distribute the damages between tort-feasors, upon any theory of equitable admeasurement.''

To the same effect is *Weir v. McEwan*, 94 N. J. L. 92, 109 Atl. 355. Such also seems to be the view of the English courts under the reformed procedure. See Annual Practice (1935), p. 243; *Greenlands, Ltd. v. Wilmshurst* (1913), 3 K. B. 507, 530, 561, C. A.; sub nom. *London Association for Protection of Trade v. Greenlands, Ltd.* (1916, 2 A. C. 15, 31), where it was

intimated that this could not be done even by the consent of all the parties. Section 50 of our Practice Act, unlike the New Jersey statute, has this further provision: "and more than one judgment may be rendered in the same cause." Under a somewhat similar provision of the New York Practice Act the Supreme Court of that State held in *Latasa v. Aron,* 59 Misc. Rep. 26, 109 N. Y. S. 744, separate verdicts might be allowed although punitive damages were given.

To the same effect are: *Edquest v. Tripp & Dragstedt Co.,* 93 Mont. 446; *McCurdy v. Hughes,* 63 N. D. 435; *Johnson v. Atlantic Coast Line Ry.,* 142 S. C. 125; *Mauk v. Brundage,* 68 Ohio St. 89; *Louisville & N. Ry. Co. v. Roth,* 130 Ky. 759; *Waggoner v. Wyatt,* 43 Tex. Civ. App. 75.

We cannot assume the clause, "and more than one judgment may be rendered in the same cause," to be without meaning. Professor McCaskill in the Illinois Civil Practice Act Ann., page 123, says of section 50(1):

"The judgment provided for in section 50 extends the principle of divisible judgment that is common in equity decrees, and is appropriate, if not indispensable, where, as in this Act, provision is made for joining legal and equitable causes of action, and causes of action which have no relation to each other.

"At common law the judgment followed the verdict. Divisible verdicts were not sanctioned because they would require juries to determine the rights of parties on one side of the litigation as between themselves, and this was thought to be an undue tax upon their powers. The present Act permits more issues to be decided by a single jury within the discretion of the court when it is thought their powers will not be overtaxed, and permits a division of the issues between several juries when that is thought desirable. . . .

"This section does not alter the form of judgment that

will be rendered against defendants jointly liable. The nature of such a liability gives the plaintiff a right to satisfaction against any of a group. Whatever may be their rights as between themselves, the defendants cannot deprive the plaintiff of his privilege of electing the one or ones against whom execution shall issue. Contribution, indemnity, and exoneration are matters in which the plaintiff is not interested.''

The late Prof. Hinton, of the University of Chicago Law School, and a former judge, in discussing section 50 said: ''One rather striking change that section 50 makes is in allowing a number of judgments in the same case, the ordinary common law rule being that one judgment disposed of the entire case. But where we have such separate and divers controversies as authorized under our party section, separate judgment may be the only practical way of handling the problem.'' (Harrow's Illinois Practice Manual, page 179.)

We agree with this interpretation of this section of the statute and think the court did not abuse its discretion in entering these several judgments on the several verdicts. We think the verdicts disclose that the jury had no difficulty in fixing the liability of each defendant, finding the defendants, whom the evidence tended to show had more to do with the claimed wrongful treatment of plaintiff, liable for a greater amount than some of the other defendants. But we think we ought to say that the evidence tending to show that plaintiff was assaulted and ill-treated, while in the custody of defendants, was overcome by the denial of the defendants and other reputable disinterested witnesses, and the verdicts which seem to sustain plaintiff's version in this respect are against the manifest weight of the evidence.

For the errors heretofore pointed out the judgment will be reversed and the cause remanded for another trial.

*Reversed and remanded.*

O'Connor and McSurely, JJ., concur.