Jennie Stoewsand, Appellee, v. Checker Taxi Company,
Defendant, and City of Chicago, Appellant.

Gen. Nos. 43,678, 43,740.

194

Opinion filed May 7, 1947. Released for publication May 22, 1947.

BARNET HODES, Corporation Counsel, for appellant; J. HERZL SEGAL, Head of Appeals and Review Division, SYDNEY R. DREBIN and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

CHARNEY & SERVOS and IRVING G. ZAZOVE, all of Chicago, for appellee; IRVING G. ZAZOVE, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Jennie Stoewsand filed a complaint in the superior court of Cook county against Checker Taxi Company, a corporation, and the City of Chicago, a municipal corporation, to recover for injuries sustained when the taxicab in which she was a passenger struck what she alleged to be a hole in the Northwest Highway near

Bryn Mawr avenue in Chicago, on January 27, 1941. The taxi company was charged with acts of negligence in the operation of the cab and the City was charged with neglecting to keep the highway in a reasonably safe condition, and with suffering a water main beneath the surface of the highway to become broken and defective, thereby causing the pavement to sag. Separate answers filed by the defendants denied the charges of negligence. The City also denied that it controlled or maintained the Northwest Highway, or that it had any duty to maintain or supervise that highway. A trial before the court and a jury resulted in separate verdicts, one finding the Checker Taxi Company guilty and assessing plaintiff's damages at $10,000, and the other finding the City guilty and assessing her damages at $10,000. Motions by each defendant for a directed verdict were overruled. A motion by the taxi company for judgment notwithstanding the verdict was denied. Separate motions by the taxi company and the City for a new trial were denied. Judgments were entered on the verdicts for plaintiff and against the Checker Taxi Company for $10,000 and against the City for a like amount. The Checker Taxi Company filed notice of appeal and the City filed notice of appearance. The taxi company did not file its appeal in this court. The City, under its notice of appearance, prosecuted its separate appeal.

On Monday, January 27, 1941 at about 11:00 a.m. plaintiff was a passenger in a taxicab of the Checker Taxi Company, which was proceeding northwesterly in Northwest Highway, north of Bryn Mawr avenue in Chicago, when it hit a hole or break in the pavement, causing her to sustain personal injuries. It had snowed that morning and the night before and there was snow on the ground. The driver testified that at the place where the car hit the hole, there was a pool of water. Witnesses for plaintiff testified that the highway is State Highway No. 14 and is patrolled by

State police. Norman Beggs, assistant highway engineer for the State division of highways, called as a witness for plaintiff, testified that the State issued a permit to the City to make an opening in the highway about January 30, 1941. Otis L. West, a witness called by plaintiff, testified that the highway is a State highway. John T. Murray, a witness called by the State, testified that his company paved Northwest Highway in 1935 under a contract with the State of Illinois. Andrew Haski, a witness for plaintiff, testified that on the morning of January 27, 1941 he saw quite a few automobiles hit a hole in the street on Northwest Highway between Bryn Mawr and Melvina avenues; that the hole was about a foot or a foot and a half long and about a foot wide and a half a foot deep; that the "hole was sagging there for quite a while"; that he saw "that hole there for about a week prior to January 27, 1941"; and that about a week or two after the occurrence, repairmen for the City fixed a leak in the water main there. His father, Albert Haski, testified that the water was leaking there for about six months; that he saw the hole a couple of weeks before the occurrence; but that he did not see any vehicles hit the hole.

Norman Beggs, the assistant highway engineer, called by plaintiff, produced records from his department showing that a permit was issued from the Illinois division of highways to the City water pipe extension department authorizing the cutting of a hole three feet by four feet in the concrete pavement in Northwest Highway to repair a leak in a water pipe, the work to begin January 30, 1941. John F. McCarty, an investigator and estimator of damages for the water pipe extension division of the City, called by the City, testified that a complaint was received by that division on January 27, 1941 at 4:55 p. m. of a bad leak on the east side of the Northwest Highway 75 feet north of Bryn Mawr avenue, and that the com-

plaint came from the surface lines. The record shows that the big 12 inch main required repairs and that a leak therein was repaired on January 28, 1941, at which time an opening three feet by four feet was made in the concrete. Henry Silberman, a plumber employed by the City for three years in the water pipe extension division, testified that on January 27, 1941 he received the complaint at 4:55 p. m.; that he left the garage at 5:05 p. m.; that he arrived at Northwest Highway and Bryn Mawr avenue about 5:30 p. m.; that he found "a small leak coming up through the expansion joint between slabs of concrete" on the east side of Northwest Highway; that "there was no hole there"; that "there was no accumulation of water where this leak was"; and that the "water was running towards the curb into the gutter into the sewer." Walter Meyers, Silberman's driver, testified that there was no hole there in the pavement at the time. Fred Northen, a foreman for 30 years in the water pipe extension division, testified that on the morning of January 28, 1941 he received a complaint slip; that with a crew he made an opening three by four feet in the concrete on the east side of Northwest Highway, 75 feet north of Bryn Mawr avenue; that he repaired a joint leak in the 12 inch main; that he got there a little after 9 o'clock in the morning; that there was no hole in Northwest Highway where he did the work prior to the time when he made the opening; that there was a "small splash of water" coming through the seam; that the hole was filled in, tamped from bottom to top right up to level, or an inch or half an inch over; that they took the truck with double tires in the back and ran it over the hole to make sure it would stand traffic; that he did not put the cement back on the highway; and that on February 3, 1941 the brick work and mason work was done.

The City maintains that the separate verdicts of the jury and the separate judgments thereon were irregu-

lar in that they apportioned damages between joint tortfeasors contrary 'to the law; that the trial court had no jurisdiction, after notice of appeal was filed, to vacate the judgment against one defendant joint tortfeasor; and that if it had jurisdiction so to do it erred (a) in not treating a payment made by that defendant to the plaintiff as a release of the City, or (b) in not applying the amount paid in reduction of the remaining judgment.

The trial was commenced on June 20, 1945 and the case was submitted to the jury on July 5, 1945. The record shows that the hour of adjournment having arrived, the parties stipulated that when the jury agreed upon a verdict, they should reduce it to writing, "sign and seal the same"; that the jurors be permitted to separate and that the polling of the jury be waived. The court submitted six forms of verdict to the jury. One form read: "We, the jury, find the defendant Checker Taxi Company, a corporation, and the City of Chicago, a municipal corporation, guilty, and assess plaintiff's damages at the sum of $——." Another form read: "We, the jury, find the defendant City of Chicago, a municipal corporation, guilty, and assess plaintiff's damages at $——." Another form read: "We, the jury, find the defendant Checker Taxi Company, a corporation, guilty, and assess plaintiff's damages at the sum of $——." A fourth form read: "We, the jury, find the defendant Checker Taxi Company, a corporation, and the City of Chicago, a municipal corporation, not guilty." A fifth form read: "We, the jury, find the defendant City of Chicago, a municipal corporation, not guilty." A sixth form read: "We, the jury, find the defendant Checker Taxi Company, a corporation, not guilty." After deliberating, the jury completed and signed two forms of verdict, one finding the City guilty and one finding the Taxi Company guilty and each assessing plaintiff's damages at $10,000. The three forms of "not guilty"

verdicts were not signed by the jurors. Another form of verdict reading: ''We, the jury, find the defendant Checker Taxi Company, a corporation, and the City of Chicago, a municipal corporation, guilty, and assess the plaintiff's damages at the sum of $——,'' was filled in by the jurors with the words and figures ''Twenty thousand ($20,000) dollars.'' This form of verdict was not signed.

The jurors having separated, the sealed envelope was opened by the clerk when court convened on July 6, 1945. The clerk read the two signed verdicts finding the respective defendants guilty and assessing plaintiff's damages in each verdict at $10,000. The attorneys for the defendants stated that the verdicts were irregular and that two separate judgments could not be entered thereon. The court adopted a suggestion that consideration of the matter be postponed until July 31, 1945. On the latter date the court overruled defendants' objections to the entry of judgments and entered a separate judgment against each defendant for $10,000. On August 2, 1945 plaintiff filed an assignment of her judgment against the City to Bernice C. Legner, dated July 31, 1945. On August 7, 1945 motions for judgment notwithstanding the verdict, and in the alternative for a new trial, were filed by the Checker Taxi Company, and on August 8, 1945 a motion for a new trial was filed by the City. On September 24, 1945 the court denied the motion of the Checker Taxi Company for judgment notwithstanding the verdict and the motions of both defendants for a new trial, and again entered separate judgments on the verdicts against each defendant for $10,000. On October 10, 1945 notice of appeal by the Checker Taxi Company from the judgment of July 31, 1945, also proof of service, was filed. Therein the company appealed from the judgment entered against it and stated that it would ask that the judgment be reversed and that the cause be remanded for a new

trial. On October 11, 1945, the court fixed the amount of supersedeas bond of the Checker Taxi Company at $12,000. On October 13, 1945, the Checker Taxi Company filed a praecipe for trial court record and proof of service. On October 16, 1945, the City filed a notice of appearance with proof of service, stating that it "desires to join as appellant with Checker Taxi Company, a corporation, in the prosecution of appeal to the Appellate Court of Illinois, First District, from the judgment of the Superior Court of Cook County, entered in the above entitled cause on July 31, 1945, on the verdict of the jury in favor of plaintiff and against the defendant," and the orders of the court entered on September 24, 1945, which denied and overruled its motion for a new trial. In this notice of appearance they asked that the Appellate Court reverse the "said judgment and orders of the Superior Court," or in the alternative, remand the cause for a new trial.

On November 13, 1945, the attorneys for the Checker Taxi Company filed a stipulation between their client and plaintiff that the judgment entered on September 24, 1945, against the Checker Taxi Company be vacated and set aside, that the motion of that corporation for a new trial be allowed, and that the suit against it be dismissed. These attorneys asked that an order be entered in accordance with the stipulation. On the hearing of the motion on November 29, 1945 the attorney for plaintiff stated that "we have executed a covenant not to sue the Checker Taxi Company," and to join in the request that the court vacate the judgment against that company, allow its motion for a new trial and dismiss the suit. The City opposed the motion on the ground that since notice of appeal had been filed, the court had no jurisdiction to hear the motion. From a discussion of the attorneys it appears that $8,500 had been paid, or would be paid to plaintiff by the Checker Taxi Company. The attorney for the

City suggested that in the event his suggestion that the court was without jurisdiction be overruled, that the amount of $8,500 be applied in reduction of the judgment of $10,000 against the City. The attorney for plaintiff stated to the court that plaintiff's position was that ''there was one verdict of $20,000 apportioned by the jury.'' The attorney for the City also stated that to be consistent, the judgment against the City should be ''satisfied.'' On December 21, 1945 an additional stipulation between plaintiff and the Checker Taxi Company was filed, giving the latter leave to withdraw its notice of appeal. On that date the court entered an order pursuant to the stipulation that the Checker Taxi Company be given leave to withdraw its notice of appeal; that the order overruling its motion for a new trial be vacated; that a new trial be allowed as to that defendant; that the judgment as to it be vacated and that the case as to it be dismissed. The Checker Taxi Company did not present a supersedeas bond and no order granting a supersedeas was entered as to either defendant. The Checker Taxi Company did not file any record in this court. On January 4, 1946 the City filed a short record showing the notice of appeal by the other defendant and its notice of appearance. On February 11, 1946 the City filed a complete record and this court entered an order consolidating the cases.

The City maintains that the separate verdicts of the jury and the judgments thereon are irregular in that contrary to the law, they apportion damages between joint tortfeasors; that the trial court had no jurisdiction after notice of appeal was filed, to vacate judgment against one defendant joint tortfeasor; and that if it had jurisdiction, it erred (a) in not treating the payment made by that defendant to the plaintiff as a release of the City, or (b) in not applying the amount paid in reduction of the remaining judgment. The parties have ignored the fact that there was an assign-

ment of the judgment against the City. Plaintiff asserts that the amount of $20,000 is not in excess of her compensatory damages; that it is not necessary that the verdict be signed by the jurors; that the verdict is sufficient if it expresses the intent of the jury; that the court ''might have properly entered a judgment against both or either of the defendants for twenty thousand dollars'' and ignored the separate verdicts; or, under authority of *Shaw v. Courtney,* 317 Ill. App. 422 (affirmed in 385 Ill. 559), the court could, as it did, enter separate judgments on the separate verdicts; that since either defendant ''might have suffered a judgment for $20,000, the City is in no position to complain of an alleged irregularity'' and ''which was to its advantage''; that the irregularity, if any, was cured when the court permitted the withdrawal of the notice of appeal of the Checker Taxi Company and the dismissal of that defendant out of the case; that there is nothing in the record ''to enable the court to pass upon the question as to whether or not the agreement to dismiss the proceedings against the Checker Taxi Company was a convenant not to sue''; that if there was any agreement between plaintiff and that company, an examination of the agreement itself is essential to a decision on the question of whether it was a covenant not to sue or otherwise; that the trial court was not given an opportunity to pass upon the question of whether the agreement to dismiss was or was not a covenant not to sue; and that any irregularity in the return of separate verdicts and the entry of judgments thereon was remedied by the subsequent procedure.

The court entered the two judgments on July 31, 1945, each for $10,000, and re-entered these judgments on September 24, 1945. The notice of appeal specified that the Taxi Company sought to reverse the judgment entered on July 31, 1945. As that judgment had not been vacated or modified, there was no

necessity of re-entering it. Therefore, we shall disregard the second judgment. In view of the fact that the notice of appeal and the notice of appearance seek to reverse the judgment of July 31, 1945, we do not feel that we are called upon to pass on the matters that were subsequently discussed by the parties. We will, therefore, not pass upon the matters before the court subsequent to the filing and service of the notice of appeal and the notice of appearance.

Section 68 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 192; Jones Ill. Stats. Ann. 104.068] provides that it shall be sufficient for the jury to pronounce their verdict by their foreman in open court without reducing it to writing, if it is a general verdict, and that the clerk shall enter the verdict in form under the direction of the court. This section contemplates the return of an oral verdict pronounced by the foreman in open court. When received, it should be entered in form under the direction of the court. In the instant case the parties stipulated and the court directed the signing and sealing of the verdict. The jury was then to separate and the polling of them was waived. The unsigned form of verdict against both defendants is ineffective. There was no instruction given to the jury as to the procedure to be followed in arriving at and signing a verdict or verdicts, nor does the record show any oral direction as to the procedure. Presumably, the forms of verdict were merely handed to the jurors. The complaint charges the defendants with liability as joint tortfeasors. It is well settled that a jury may not apportion damages between joint tortfeasors. The judgment must be for a single sum against all of the parties found responsible and the jury cannot apportion the damages in an attempt to sever the same as to the several defendants.

Plaintiff relies on the case of *Shaw v. Courtney, supra.* In that case the first count charged

assault and battery and the second count charged unlawful imprisonment. According to the testimony of plaintiff, all the defendants were not guilty of the same wrongful acts. The jury also returned a special verdict that the conduct of the defendants was willful, wanton and malicious. In *Shelton v. Barry,* 328 Ill. App. 497, we pointed out that either party could have moved for a severance. In the *Shaw* case the Appellate Court reviewed the authorities which adhere to the common law rule that damages between joint tortfeasors cannot be apportioned, but concluded that the law is otherwise in Illinois because sec. 50 (1) of the Civil Practice Act [Ill. Rev. Stats. 1945, ch. 110, par. 174; Jones Ill. Stats. Ann. 104.050, subpar. (1)] contains the provision that "more than one judgment may be rendered in the same case." The Appellate Court reversed the judgment because of faulty instructions. The Supreme Court, in the *Shaw* case, in affirming the judgment of the Appellate Court, said (565):

"This opinion should not be considered as giving sanction to, or disapproval of, any of the questions of law considered by the Appellate Court, for such matters have been commented upon only for the purpose of demonstrating that the record in this case does not contain any questions that may be considered on this appeal. Therefore the judgment of the Appellate Court is affirmed."

Section 50 also states that the court shall control the proceedings so that the plaintiff shall receive but one satisfaction. Substantive law is not affected by the Civil Practice Act. It is our view that sec. 50 permits the use of separate judgments only when the plaintiff presented separate demands or causes of action against the several defendants. Having elected to sue the defendants jointly, the plaintiff has treated their liability as joint. Under the common law rule, which has not been affected by sec. 50 of the Civil

Practice Act, the jury may not'apportion the damages between joint tortfeasors. With the consent of plaintiff, the court could have entered one judgment for $10,000 against both defendants. The position of plaintiff is that the jury intended to award damages of $20,000. From the record we do not know whether the jury intended to award damages of $20,000 or $10,000. Clearly, the jury was confused. In view of this confusion, we are of the opinion that the case should be remanded for a new trial. On a retrial of the case, should the jury find the City guilty, they will have the right to take into consideration, in assessing plaintiff's damages, the sum of money, if any, paid to plaintiff by the Checker Taxi Company for a covenant not to sue. *Rather v. City of Chicago,* 298 Ill. App. 625 (abst.). Should the evidence show a release of the Taxi Company, then the case against the City would fall. Should the City wish to plead, as an additional defense, the release of a joint tortfeasor, or that in assessing damages the jury should take into consideration the sum of money, if any, paid to plaintiff by the Taxi Company for a covenant not to sue, these matters should be set out in a supplemental answer as provided in sec. 39 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 163; Jones Ill. Stats. Ann. 104.039]. Thereby, issue may be joined. Should such pleadings present an issue of law the court will decide thereon. An issue of fact will be submitted to the jury. Such defenses, under common law pleading, were presented by a plea of *puis darrein* continuance.

The City argues that it did not operate and control the Northwest Highway at the time and place of the occurrence and is, therefore, not liable for the negligent maintenance of the highway. Section 4 of an act in relation to State highways (par. 294, ch. 121, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 120.215]) provides that the Department of Public Works and Buildings shall file in the department a

map outlining the exact location of the State highways, and when filed shall fully and legally establish such system, that all changes and additions shall also be noted on the map, and that a copy of the map, together with a copy of such changes, if any, shall be filed in the office of the county clerk of each county. Sec. 6 (b) states that the department shall maintain all streets designated as such highway extensions. Sec. 6 (d) authorizes the department to enter into contracts with a municipal corporation to maintain the improvement located within the municipal corporation, such maintenance to be under the supervision of the department. Sec. 7 states that before any highway, or part thereof, is taken over, the Department of Public Works and Buildings shall notify, in writing, the mayor of its intention so to do, and of the date it will assume the maintenance and care thereof. The question of whether the State assumes the care and maintenance of a highway running through a municipality should be determined from the records. A transaction of that importance should be evidenced by records. Rule 18 of the Supreme Court may be availed of for the purpose of requiring admissions as to these records. Plaintiff also introduced evidence to show that a leak in the water main caused the hole in the street. This would allow the case to go to the jury even though it appeared that the maintenance of the highway had been turned over to the State.

For the reasons stated, the judgments of the superior court of Cook county against the City of Chicago, a municipal corporation, are reversed and the cause is remanded with directions to proceed in a manner not inconsistent with these views.

*Judgments reversed and cause remanded with directions.*

Lewe, P. J., and Kiley, J., concur.